Ruffin, Chief Justice.
 

 — There is a defect in the warrant, for which the Court is obliged to reverse the judgment of the Superior Court, and arrest the judgment. The process has no reference to the statutes which give the penalties sued for; and the omission has been held to be fatal.
 
 Scroter
 
 v.
 
 Harrington,
 
 1 Hawks, 192. The objection was not taken in the Superior Court; nevertheless, under the act of 1818
 
 (Rev. ch.
 
 962, sec. 4), this Court cannot overlook it, because our judgment must be such as, upon the whole record, that of the Superior Court ought to have been.
 

 We suppose, however, that the purpose of bringing a suit for so small a sum to this Court, was to obtain an opinion upon the matters of law involved in the defendant’s exceptions; and, therefore, we have felt bound to consider them.
 

 The principal objection is that which is directed against the constitutional power of the Legislature to require the defendant to work on the Toad; which is said to be trans
 
 *308
 
 ferring the labour of the citizen to a private corporation. We have a decided opinion that the Act of 1824 (Taylor’s
 
 Rev. ch.
 
 1258), is, in this respect, constitutional; and it seems also to be just. The making of new roads, and the .
 
 r i
 
 , , , „ reparation oí those already m existence, being tor the benefit, ought to be effected by the means, of all the members of the body politic. It is in the discretion of the Legislature to raise those means by assessing taxes on persons and property, or by directly exacting the personal service of the citizens. From a very early period, those works have in this state been carried on by the personal labour of the inhabitants of the several districts within which the particular roads are situate. The road in question is laid out in the county in which the defendant resides; and, by the 9th section of the Charter, it is declared to be a public highway. The objection is, that, although it be thus declared, passengers are required to pay tolls to the stockholders; which makes it, substantially, private property. When this objection shall be made by one from whom tolls can, under the act, be exacted, it will be our duty to consider whether such a person can be compelled to work on the road, for the passing on which he has also to pay. But that is not the defendant’s case. The 7th section exempts the citizens of Buncombe county from the payment of tolls. The plaintiffs have, therefore, a fair retort on the defendant of his own argument; and might say, that it is unconstitutional to allow him to use their property without making compensation. But the argument on either side is seen to be unsound, when the two provisions — against one of which the plaintiffs might object, and against the other the •defendant does object — are brought together. By the 13th section, the charter provides that such persons as by law are liable to work on public roads in Buncombe, and reside within two miles of this road, shall do six days’ work on it in the year, under the direction of the President and Directors of the Company. This then is the price which the defendant pays for the use of the road by himself and the other inhabitants of the county; and they have to make roads in their neighbourhoods for his use. The pro
 
 *309
 
 vision is probably beneficial to the defendant; for less than six days’ labour of those who live within two miles of the road might be inadequate to keeping the necessary roads in a condition to be passed, while the turnpike must be kept in repair at a great expense to the company. But of the reasonableness of the quantity of labour compared with the value of the privilege to the defendant, it is for the Legislature to decide, not the court.
 

 The case does not state the contents of the subscription and corporation books that were produced, and therefore we cannot say positively of what they were evidence. We suppose them to be the entries of such acts as the charter prescribes, as no deviation is specified. If so, those documents, when identified, were not only evidence, but complete evidence, of the organization and existence of the corporation.
 
 Highland Turnpike Company
 
 v.
 
 M‘Kean,
 
 10 John. Rep. 154. But such evidence was not necessary. It is true, that when a corporation is plaintiff, it must, upon the general issue, show itself to be a corporation, But when the charter is by statute, that is done by showing the statute, and that the persons acting under colour of it are in the peaceable enjoyment of the corporate franchises and rights thereby granted. This was ruled in
 
 Tar River Nav. Company
 
 v.
 
 Neal,
 
 3 Hawks, 520, and is also held in other states.
 
 Trustees of Vernon
 
 v.
 
 Hills,
 
 6 Wend. Rep. 23. The non-existence of the corporation, or 1 r ? the forfeiture of its charter, can only be adjudged at the suit of the sovereign against the usurpers of the franchises, They cannot be inquired into collaterally, at the instance of an individual, unless he show that it has already been so adjudged in favour of the state: in other words, that the charter has been annulled by judicial sentence and no longer exists. Here it appears that the corporation was
 
 de facto
 
 organized, and that it had made the road which the defendant was warned to assist in repairing.
 

 1 he last objection is to the evidence, given on the trial, of the appointment of the manager or overseer of the
 
 1L
 
 ° repairs of the road, who warned the defendant to work. The case does not state the terms of the entry on the books as to the duties imposed, or authority conferred, by
 
 *310
 
 the directors upon the agent; nor does any objection seem to have been taken, that the entry of the appointment did not profess to give him the authority which he assumed over the defendant. We have, therefore, no means of forming an opinion upon those questions; and we do not decide them, as they are distinct from that made by the exception. We also refrain from intimating, in anticipation, by what formal means the board or its agents must make known to the hands that their labour is required, and the time and place at which they must attend, so as to convey a reasonable assurance to them that the order is authentic, and the obedience of each individual due to it. The case states that
 
 “
 
 due notice” was given to the defendant; which he refused to obey, without assigning any cause, because, as we suppose, he denied the right of the corporation altogether. We confine ourselves, therefore, to the exception, which is, that the appointment of Kimsey, who gave the notice, could not be proved on the trial, by the production of the order of appointment entered in the directors’ books, but must be shown by an act under the common seal of the corporation.
 

 We think otherwise. . Corporations by prescription, or those created by letters-patent, act only by deed. At least that is the general rule, as stated in the old books, of corporations generally. The common law devised no other means of action by those bodies, and admitted no other evidence of their action. Yet, in modern times, that has been departed from; and it is now said that, although they can grant by deed only, yet they may do many other acts without one; as
 
 appoint a bailiff,
 
 or the like.
 
 Harper
 
 v.
 
 Charlesworth
 
 (4 Barn.
 
 &
 
 Cresw. 575; 10 Eng. C. L. Rep. 412.) But, however that may be in respect to bodies politic thus existing, it seems settled by many decisions in this country, and by the constant practice, that it is otherwise with respect to corporations created by legislative charter, which allows or requires the ordinary business to be done, not by the corporators as an entire body, but by a select board, as the agents of the corporation itself. The statutes control the common law; and the corporation has the capacities, and may act in the modes pointed out in
 
 *311
 
 the statute.
 
 Fleckner
 
 v.
 
 The Bank of the Ünited States,
 
 8 Wheat. 338, is a full authority upon this point, and states the reasons for it with ability, as well as comments upon the cases. The charter to the plaintiffs seems to have been founded upon this very idea. By the first section the corporators themselves are to act in “ electing a President and three Directors for conducting the business and concerns of the said company.” By the 4th section “ the President and Directors shall,
 
 on behalf of the corporation,
 
 have power and authority to agree with any persons for constructing or improving said road, and to make all such contracts touching the same as may be fit or expedient; and may appoint a treasurer, a clerk, and such managers, and servants, and toll gatherers, as they deem necessary— any of whom they may remove at pleasure.” This phraseology renders it manifest, that the action of the corporation itself, was expected to be seldom necessary or useful, except to raise the funds and select persons to superintend the proper disbursement of them. All the other objects of the act, it was thought, would be better attained by authorizing, if not requiring, the corporation to act in all ordinary matters through the President and Directors,
 
 as its agents,
 
 or, as expressed in the act itself,
 
 “
 
 on behalf of the corporation.” The statute plainly con-tradistinguishes between the Corporation and the Board of Directors; and treats the last as agents constituted, with plenary powers, by election, and not by deed. Now there is no rule of the common law, that agents of a corporation must make a deed as the evidence of their transactions on behalf of their principals, if the same thing might be done on their own behalf by parol. Nor does the statute require it. A cashier of a bank gives his receipt for money paid to him, or deposited with him as the officer of the bank, and not an acquittance under the corporate seal, or a covenant to account. Of the transactions of the Board of Directors there ought to be some written memorial, as the body consists of several persons, and there is no other method of authenticating their common mind. This charter prescribes several acts to be done by the board, in which it was clear that it was not
 
 *312
 
 intended they should act by deed; such as reducing the rate of tolls, reporting their proceedings to the stockholders, and making an annual return of the amount of tolls to the General Assembly; and it does not require the contracts- or the appointments, authorized in it, to be made by deed. Of course they may be proved in any other method which fully establishes the terms or the fact sought for; and a written note in the books of the board, appointing the officers and servants, is, we think, sufficient for that purpose; or to show their duties and authorities therein prescribed — which indeed may, in many cases, be inferred from the nature of the office, or the practical exercise of power under the observation of the members of the board. In
 
 The Bank of the United States
 
 v.
 
 Dandridge,
 
 12 Wheat. 64, the Supreme Court of the United States went so far as to hold, that the acceptance of a cashier’s bond might be found, without any recorded evidence of it, upon the acts of the cashier and the board, as presumptive evidence, although the charter required that it should be approved by the board before the cashier should enter upon his duties.
 

 The new trial was therefore properly refused. But for the defect of the warrant, the'judgment must be reversed, with costs in this court; and the judgment arrested.
 

 Per Curiam. Judgment arrested.