DUREN *v.* ARKANSAS STATE BOARD OF OPTOMETRY.

4-8173                                    201 S. W. 2d 573

Opinion delivered April 21, 1947.

Rehearing denied May 19, 1947.

*Claude E. Love,* for appellant.

*J. S. Brooks* and *Carl Langston,* for appellee.

HOLT, J.   April 4, 1946, proceeding under the authority of Act 94 enacted by the General Assembly of 1941, appellee, the State Board of Optometry, instituted this action in the Union chancery court to enjoin appellant from the practice of optometry "within the City of El

Dorado, Arkansas,'' or within the court's jurisdiction. As grounds for the relief prayed, it was alleged that appellant was practicing the profession of optometry without having procured a license as required by the act.

A general denial was interposed by appellant.

Upon a hearing, the trial court granted appellee's prayer, and entered a permanent injunction against appellant. From this order and decree comes this appeal.

For reversal, appellant says that the evidence was not sufficient to show that appellant had no license under the provisions of the act and therefore it was error to grant the injunction. We cannot agree with this contention.

The act is constitutional and valid, *Melton* v. *Carter*, 204 Ark. 595, 164 S. W. 2d 453, and reaffirmed in *Ritholz* v. *Arkansas State Board of Optometry*, 206 Ark. 671, 177 S. W. 2d 410.

Among its provisions are the following: ''Section 3. The Board shall meet at least twice each year; and at its first regular meeting shall elect a President, a Vice-President, a Secretary-Treasurer. A record of its proceedings shall be kept which shall be open for public inspection at reasonable times; and said Board shall make a report annually to the Governor showing all receipts and disbursements of moneys, and a summary of all business transacted during the year. . . . Section 5. No person, except those already duly licensed by the Board, shall practice Optometry until he shall have passed an examination conducted by the Board. . . . All persons making application for examination and for registration shall be required to pay to the Treasurer of the Board a fee of Twenty-five Dollars. . . . Section 6. All registered Optometrists shall annually pay Ten Dollars to the Treasurer of the Board as a renewal license fee. . . . Section 8. The Board shall have the following powers in addition to those already conferred above: . . . (5) to bring suit in its proper name to enforce or restrain the violation of any provision of this Act. . . . Section 12. The following Acts are hereby

declared to be unlawful Acts: . . . (4) for any person, firm or corporation or partnership not having a license to engage in the practice of optometry. . . .

"Section 15. The violation of any provision of this Act may be enjoined by the State Board in the Chancery Courts of this State, even though such violation may be punishable by fine, the intention of this Act being to provide a speedy means of protecting the public which has not heretofore existed."

The material facts were to the following effect: Appellant maintained an office in the city of El Dorado in which he maintained optical equipment, such as charts, with which to test eyes, trial lenses, frames and other scientific instruments, which he used in fitting eye glasses. Three witnesses testified that they went to appellant, had glasses fitted, and paid him for these professional services.

Dr. George H. Brown testified that he was secretary-treasurer of the Arkansas Board of Optometry. He was first appointed in 1935 to this position and served until 1938, when he resigned. He was reappointed in April, 1945, and was in charge of the board's files and records. He had searched these records and files since the board's organization in 1913 to the present, and appellant had never made any application for a license, and no license authorizing him to practice had been issued. He exhibited to the court a book containing a roster of all men licensed to practice optometry in Arkansas. The board's records and files were kept by its secretaries in succession up to date, and were turned over to them under oath. Licensed optometrists pay dues to him as treasurer and appellant has never paid any dues. A man may go thirty days without paying dues and is then suspended. The record book itself was not introduced in evidence. Appellant did not testify and offered no testimony.

As we view the evidence, it supports the finding of the chancellor that appellant was practicing optometry without a license, contrary to the act, *supra,* and that appellee was entitled to the injunctive relief prayed.

While the evidence of Dr. Brown, secretary-treasurer of the board, principally relied upon by appellee here to show that appellant had no license to practice the profession of optometry, as the act required, was of a negative nature, it was, we think, sufficient. Dr. Brown as secretary-treasurer of the board had the care and custody of its files and records and was thoroughly familiar with them.

This court in *Thomas* v. *Spires,* 180 Ark. 671, 22 S. W. 2d 553, said: "While matters of record must be proved by exemplification of the record, negative matter may be proved by those familiar with the record and papers. *Hendry* v. *Willis,* 33 Ark. 833."

Our holding in this case is also in accord with the general rule as announced in 32 C. J. S., p. 736, § 807, subdivision (d): "Parol evidence is generally admissible to prove a negative, that is, that facts or documents do not appear of record. Where it is sought to prove a negative, that is, that facts or documents do not appear of record, or that as to certain acts or proceedings the record is silent, parol evidence is admissible as primary proof; the record is not higher evidence."

Finding no error, the decree is affirmed.