## STATE v. JACK W. FRANKS.

(Filed 12 June 1964.)

1. **Criminal Law § 75— Corporate records held sufficiently identified and authenticated.**

Where, concerning certain volumes of loose-leaf records, there is testimony of witnesses that they had seen the volumes in the office of the corporation of which defendant was an officer, that the books were records of debenture sales made by the corporation and that the witnesses were salesmen and had seen in the books records of sales made by them, that defendant signed the debentures, together with testimony by an employee of the office of the Secretary of State that he had requested that the records be delivered to him and that the books introduced in evidence were those delivered to him at his office in response to his request, and that the books were taken by the Highway Patrol to the preliminary hearing and there impounded by the court and kept under lock and key, the evidence *is held* to show defendant's connection with the records and to establish proper identification and authentication of the records, rendering them competent in evidence notwithstanding the absence of evidence as to who made or authorized the entries in the books, or that they were made in the regular course of business, since proof of the identity of the records raises the presumption that the entries therein were made by an authorized agent in the regular course of business.

2. **Same—**

The admission in evidence of corporate records before proper foundation has been completely laid will not be held for error when subsequent to their admission proper foundation is laid.

STATE *v.* FRANKS.

**3. Criminal Law § 56—**

An expert who has examined the records of a corporation may testify from his examination as to facts ascertained by him from a large number of separate entries, such as the total amount of debentures sold by the corporation as shown by the records for the period in question.

**4. Same—**

The security deputy in the office of the Secretary of State may testify that from a search of the books and records in the office the debentures in evidence were not registered in that office.

**5. Criminal Law § 56.1;   Corporations § 15—**

It is competent for the security deputy in the office of the Secretary of State, who is shown to be an expert in the field, to testify that the debentures, which the evidence shows were sold to persons in this State, were not exempt from registration under G.S. 78-3 and that the sales of such debentures were not transactions exempt from the operation of the Securities Law by G.S. 78-4.

**6. Criminal Law § 51—**

Where defendant brings out on cross-examination that the witness in question was a lawyer with several years experience as a security deputy in the office of the Secretary of State in the administration of the Securities Law, the evidence is sufficient to show that such witness is an expert in his particular field.

**7. Corporations § 15—**

Any officers, directors, or agents of a corporation actively participating in the violation of G.S. 78-23 of the Securities Law in the conduct of the company's business, or which such conduct they have actively directed, may be held criminally liable individually therefor.

**8. Same—**

The evidence in this case *is held* amply sufficient to be submitted to the jury on the charge of unlawfully causing to be sold through the acts of designated agents and divers other persons certain debentures in violation of the Securities Law, and defendant's motion for nonsuit on this count was properly overruled, but as to the count charging defendant with causing to be sold certain debentures to named persons in violation of the Securities Law, nonsuit should have been allowed, there being no evidence to support the charge of sales to the persons named.

DENNY, C.J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Shaw, J.,* 4 November 1963 Regular "A" Criminal Session of GUILFORD, Greensboro Division.

The defendant was indicted for a violation of the "Securities Law" of the State of North Carolina, G.S. Ch. 78. The indictment has two counts. The first count charges that defendant Jack W. Franks, on 1 April 1957, and thereafter to and including 17 June 1963, at and in

Guilford County, unlawfully, knowingly and feloniously caused to be sold by and through the ·acts of one Emmett Fulk, one H. C. Tuck, and divers other persons, certain securities, to wit, certain debentures issued by Franks' Finance Company, a North Carolina corporation, purportedly bearing interest at the rate of 6% per annum, known as 6% debentures, without having registered said securities with the Secretary of State of North Carolina as required by G.S. Ch. 78, and without being registered with the said Secretary of State as a broker-dealer or salesman, in violation of G.S. Ch. 78. The second count charges that Jack W. Franks, on the days and years aforesaid, at and in the county aforesaid, did unlawfully, knowingly and feloniously cause to be sold 6% debentures of Franks' Finance Company and more specifically, to wit, did unlawfully cause to be sold on or about 1 April 1957, by and through the acts of one Emmett Fulk, certain debentures of said company to Vivian M. Fulk, 2017 Craig Street, Winston-Salem, North Carolina, and on 17 June 1963, by and through the acts of one H. C. Tuck, certain debentures of said company to Lidia Duncan Clayton, Route 1, Timberlake, North Carolina, which said securities were not registered with the Secretary of State of North Carolina, in violation of G.S. Ch. 78.

Plea: Not guilty. Verdict: Guilty of the two counts charged in the indictment.

On the· first count in the indictment, the trial court sentenced defendant to be imprisoned for a term of three years and to pay a fine of $1,000. On the second count in the indictment, the trial court sentenced defendant to be imprisoned for a term of two years and to pay a fine of $1,000; the term of imprisonment on the second count to begin at the expiration of the term of imprisonment imposed on the first count. From the judgment, defendant appeals.

*Attorney General T. W. Bruton, Deputy Attorney General Harry W. McGalliard, and Assistant Attorney General Richard T. Sanders for the State.*

*Butler, High & Baer by L. Sneed High for defendant appellant.*

PARKER, J. Defendant assigns as error the admission in evidence, over his objection, of seven volumes containing a loose-leaf record of sales of debentures of Franks' Finance Company to certain persons, which were marked State's Exhibits 1 through 7, both inclusive. Defendant contends these volumes were improperly admitted in evidence, for the reason the State did not properly identify and authenticate them.

The first witness for the State was E. B. Rannells, Jr., who lives in Sanford, North Carolina, and was employed by Franks' Finance Company from the middle of June 1955 through September 1959. He testified in substance: He was employed as a salesman to sell burial lots from the beginning of his employment through the early part of 1957; after that he sold debentures. He was shown seven volumes by Mr. Rollins, a prosecuting officer for the State, which were marked for identification State's Exhibits 1, 2, 3, 4, 5, 6, and 7, and asked to look at them and state what they were, if he knew. He replied they were records of debenture sales for Franks' Finance Company, and that he had seen them before in the office of Franks' Finance Company on Davie Street in the city of Greensboro. That these volumes were loose-leaf records of debenture purchases from Franks' Finance Company by various individuals. The volume marked State's Exhibit 6, on page 142, contains a record of a $1,000 debenture sold by him to Mrs. Estelle Day Clayton; on page 122 of the same volume appears a record of a sale on 3 January 1958 by him of a $100 debenture to Dr. Ernest H. Reynolds; on page 278 of the volume marked State's exhibit 7 appears a record of a sale by him of a $2,000 debenture to Lloyd E. Watson; and on page 588 of the volume marked State's Exhibit 5 appears a record of a sale made by him to a Marshall B. McBryde. Jack W. Franks was the president of Franks' Finance Company during the period of his employment.

At this point in his testimony the State was permitted, over defendant's objection, to introduce these seven volumes in evidence. Immediately thereafter Rannells, after stating that Mrs. Jettie Franks was an officer of the company during his period of employment, testified: "Mr. Franks, the defendant, signed my compensation with the company and gave me instructions in reference to my employment; Mr. Franks was my boss."

This is the substance of his testimony on cross-examination, except when quoted: He never worked in the Greensboro office. "No records were kept under my supervision except my own personal records." He did not participate in the making of any of these records marked State's Exhibits 1 through 7 and did not make any entries in them. The only part of these records that he inspected were those that related specifically to him. He first inspected these volumes of records in their entirety in the municipal court in the city of Greensboro. "I had seen Jack W. Franks sign one of these debentures. I had stated in recorder's court that 'I have seen him sign a lot of checks, but, actually, I never saw him sign debentures'."

Rannells testified in substance on redirect examination: During the period of his employment he attended a sales meeting in the office

practically every Monday. Defendant Franks was always there. He waited to get signed debentures and carried them away and delivered them.

The next witness for the State was James Darrell Lemons, a debenture salesman with Franks' Finance Company from March 1961 to August 1963. He testified in part in substance: He frequently brought orders for the purchase of debentures of Franks' Finance Company to its home office at 807 Summit Avenue, Greensboro. Within a period of one year he saw defendant Franks sign probably a dozen debentures. Defendant Franks was president of Franks' Finance Company.

William W. Coppedge is employed as Security Deputy in the office of the Secretary of State of North Carolina. The record shows that Mr. Rollins handed Mr. Coppedge the volumes marked State's Exhibits 1 through 7. Immediately thereafter Coppedge testified in respect to these volumes: "I have seen them before; they were delivered to my office in Raleigh. I requested that they be delivered; the request was made on Mr. Franks, Mr. Joseph Franks, the attorney." Coppedge testified in substance: The records delivered in his office were the seven debenture books marked State's Exhibits 1 through 7.

On cross-examination Coppedge testified in respect to these volumes marked State's Exhibits 1 through 7 in substance, except when quoted: These books were delivered to him personally in a big box on 17 July 1963. They were not delivered to him by defendant or by an employee of Franks' Finance Company. They were delivered to him by a Mr. Starling, who identified them by telling him they were the records which he had requested from Franks' Finance Company, and which he had been asked to bring to his office. He could not find anyone in Franks' Finance Company who knew anything about them. "I had requested by telephone certain records from the gentleman (designating Mr. Joseph D. Franks who was sitting at Mr. High's left); they were not delivered for some time and then they were delivered by Mr. Starling; I only looked at the books and checked them against a list that I had been asked to sign, and no one has ever pointed out to me what these books are and I have never gone over these books with anyone who was charged with the preparing of the books." He gave Mr. Starling a signed receipt for the records he brought him. The books marked State's Exhibits 1 through 7 were in his possession until they were carried to Greensboro by the State Highway Patrol on the day of the preliminary hearing and were then turned over to the court. They were the same records delivered to him in Raleigh by Mr. Starling. The court impounded these records.

The State's evidence further shows that the defendant was given a preliminary hearing in August 1963 in the municipal county court of

Guilford County. The books marked State's Exhibits 1 through 7 were impounded by the court at that hearing and turned over to Mr. Rollins after the hearing. Mr. Rollins carried them to the office of the State solicitor where they were kept under lock and key until the trial.

James Lane Thomas, who lives in Greensboro, North Carolina, testified in substance: He bought some debentures from Jack W. Franks. He talked with him in his office several times. He bought a $1,000 debenture to start with, then a little later on in the same year he bought another $1,000 debenture, and the rest of the debentures were $100, $200, or $300 debentures; the debentures were on Franks' Finance Company. Mr. Franks was the president of the company. Mrs. Dolly Nichols Buckner, who lives in Winston-Salem, North Carolina, testified in substance: She bought $4,000 of debentures of Franks' Finance Company. She purchased these debentures after talking with Jack W. Franks, who told her he was the president of the company. The State further offered evidence to show that Ernest Oakley purchased $5,000 of debentures of Franks' Finance Company from Emmett Fulk, and the signature of Jack W. Franks on the debentures was in the handwriting of Jack W. Franks. Later he told Jack W. Franks he would like to have his money back and Franks told him they would probably be able to pay some of it back in 60 to 90 days, but he has never received any of it back. Mrs. Molly P. Cockerman, a widow, who lives in Winston-Salem, North Carolina, bought $800 of debentures of Franks' Finance Company, and the name of Jack W. Franks was on these debentures in his handwriting. Her check was made payable to Franks' Finance Company, and it has been paid.

That there is evidence of identity that the books marked State's Exhibits 1 through 7 were records of Franks' Finance Company of debenture sales seems not open to debate. E. B. Rannells, Jr., testified that he had seen these books in the office of Franks' Finance Company in Greensboro; that they were records of debenture sales for this company; and that the book marked State's Exhibit 6 contained a record of a $1,000 debenture sale by him to Mrs. Estelle Day Clayton and of a $100 debenture sale by him to Dr. Ernest H. Reynolds, and that the book marked State's Exhibit 7 contained a record of a $2,000 debenture sale by him to Lloyd E. Watson. Rannells further testified: "No records were kept under my supervision except my own personal records." William W. Coppedge, Security Deputy in the office of the Secretary of State, requested that Franks' Finance Company deliver to him in his office its records of debenture sales. On 17 July 1963 a Mr. Starling delivered to Coppedge in his office the seven debenture books

marked State's Exhibits 1 through 7 and said they were the records which Coppedge had requested from Franks' Finance Company. See *LeMaster v. People,* 54 Colo. 416, 131 P. 269.

Defendant contends that the State's evidence does not show by whom the entries in these books were made or authorized and does not show that they were made in the regular course of business, at or near the times of the transactions involved, and consequently the books were improperly admitted in evidence.

A similar contention was made by the defendant and rejected by the Court in *S. v. Rhodes,* 202 N.C. 101, 161 S.E. 722, a prosecution of a bank president on a charge of embezzlement, abstraction, and misapplication of the funds of the bank, and for making and causing to be made a false entry in the records of the bank. The Court said:

> "It is contended, however, that the evidence does not show by whom the entries in the books were made or authorized, and that the testimony of the accountant and the liquidating agent in explanation of the entries should have been excluded. The supporting argument proceeds on the theory that the records and books of a corporation may not be received in evidence for any purpose unless it is shown or admitted that the entries were made by an authorized servant or agent of the corporation. It is not doubted that cases apparently of such tenor may be cited, but the question of their application to given cases must be solved by reference to the matters in controversy—the object and scope of the litigation and the particular facts admitted or established.

> "The First Bank and Trust Company was created by statute; it was subject to public supervision; its rights, powers, and privileges were prescribed by law. It was presumed in the exercise of its powers to have appropriate books and to keep a correct record of its transactions. That it had such books is not denied. Proof of their identity as the property of the bank raised the additional presumption that the entries and records which they contain were made by an accredited clerk or agent of the corporation. *Glenn v. Orr,* 96 N.C. 413; *Turnpike v. McCarson,* 18 N.C. 306."

The State's evidence shows that James Darrell Lemons saw defendant, president of Franks' Finance Company, sign probably a dozen debentures of Franks' Finance Company in one year; that the $5,000 of debentures of Franks' Finance Company sold to Ernest Oakley and the debentures of the same company sold to Mrs. Molly P. Cockerman were signed Jack W. Franks in the handwriting of Jack W. Franks; and that Ernest Oakley later told Jack W. Franks he would like to

have his money back, and Franks told him they would probably be able to pay some of it back in 60 to 90 days, but he has never received any of it back. This evidence tends to show an actual connection between defendant and the contents of the debenture sales books of Franks' Finance Company marked State's Exhibits 1 through 7.

It seems to be the general rule under modern business conditions that entries or statements in corporate books or records are admissible in evidence against its officers in a criminal prosecution only if there is evidence tending to show that there exists some kind of actual connection between the officers and the contents of the books or records, predicated upon some facts other than their mere status as corporate officers. Annotation 154 A.L.R., p. 281. See 32 C.J.S., Evidence, § 699, p. 596, Admissions; Stansbury's N.C. Evidence, 2d Ed., § 155, p. 392; 20 Am. Jur., Evidence, § 977.

Even if we concede that the State had not laid the proper foundation for the introduction in evidence of the books marked State's Exhibits 1 through 7 at the time the trial court permitted them to be introduced in evidence, the error was harmless, for the reason that the State before it rested its case — defendant introduced no evidence — did lay a proper foundation for their admission in evidence. *Builders Supply Co. v. Dixon*, 246 N.C. 136, 97 S.E. 2d 767. Defendant's assignment of error to their admission in evidence is overruled.

William W. Coppedge, Security Deputy in the office of the Secretary of State of North Carolina was asked: "What was the total of debentures sold that you found from these Exhibits 1 through 7?" He replied: "I can tell you exactly if you'd like for me to look at my records, but I am sure it was more than $1,688,000." Defendant assigns the question and answer as error. Defendant also assigns as error the admission in evidence over his objection of the testimony of E. B. Rannells, Jr., that in certain of the books marked State's Exhibits 1 through 7 were entries of debenture sales by him to certain individuals, and that the books marked State's Exhibits 1 through 7 were loose-leaf records of debenture sales of Franks' Finance Company. Rannells testified that he had seen these books marked State's Exhibits 1 through 7 in the office of Franks' Finance Company in the city of Greensboro, and that he had inspected these books in respect to entries relating specifically to him. Even if they were permitted by the court over objection to testify as to the entries in these books before a proper foundation for their admission in evidence had been laid, the error was harmless, for the reason that the State before it rested its case had laid a proper foundation for their admission in evidence. All these assignments of error are overruled. In *S. v. Rhodes, supra,* it is said:

"They [T. R. Grubbs and H. G. Kramer] examined the books, made tabulations and calculations, and testified as to the results of their investigation. This mode of exemplifying the records of an insolvent bank has received the approval of this Court in *S. v. Hightower,* 187 N.C. 300. It is founded on considerations of policy and convenience, if not of necessity, and commendably results in relaxation of the rigid rule which would require the production of all the employees, who through an indefinite period had made entries in books of the corporation. Where a fact can be ascertained only by the inspection of a large number of documents made up of many detailed statements it would be practically out of the question to require the entire mass of documents and entries to be read by or in the presence of the jury. As such examination cannot conveniently be made in court the results may be shown by the person who made the examination. Wigmore on Evidence (2 ed.), sec. 1234; Chamberlayne on Evidence, sec. 2317. The production of the documents and the privilege of cross-examination and of the introduction of evidence afford ample protection of the defendant's rights."

Defendant further assigns as error the testimony of witnesses that debentures bought by them and which were introduced in evidence were debentures of Franks' Finance Company. These assignments of error are without merit.

Defendant assigns as errors that the trial court, over his objections, permitted William W. Coppedge, Security Deputy in the office of the Secretary of State of North Carolina to testify that a search of the books and records in the office of the Secretary of State disclosed that a number of debentures of Franks' Finance Company sold in this State to certain persons were required to be registered in this State pursuant to G.S. Ch. 78, and were not registered as required by our statute; that no application for their registration had been filed as required by our statute; that these debentures were not exempted securities as set forth in G.S. 78-3; that defendant Jack W. Franks had never made application for registration as a salesman or broker of securities in the office of the Secretary of State; and that the sales of debentures of Franks' Finance Company were not exempt transactions under our statute.

Coppedge testified on cross-examination:

"I am a lawyer. There are securities which are exempt under the North Carolina Securities Act, and whether a security is exempt or not is a matter of law and it does not depend upon

anyone's opinion as to whether they are exempt; if they comply
with the law, they are exempt; one person must determine whether
or not the law is applicable; the law itself cannot decide whether
or not something is exempt; in a majority of the cases I am the
individual who determines whether or not the law is applicable;
there are securities transactions which are exempt under the
North Carolina law; I am familiar with them; I am familiar with
all the exemptions; it is a matter of law whether a transaction is
exempt or not; a security might be non-exempt and the transac-
tion itself exempt, or an exempt security can be sold under certain
circumstances to persons other than by broker-dealers; if the
transaction is exempt from the Securities Law, it may be sold
under the North Carolina Securities Act."

After Coppedge had finished his testimony, the State called three
witnesses to the stand. After these three witnesses had finished their
testimony, Coppedge was recalled to the stand. On redirect examina-
tion he testified, over objection by the defendant, that the sales of
debentures of Franks Finance Company to purchasers, shown by its
debenture records marked State's Exhibits 1 through 7 were not exempt
from the operation of the security laws of North Carolina requiring
registration of securities. Then Coppedge on recross-examination testi-
fied as follows: "I am basing my answers on my opinion as to the in-
terpretation of the security laws and as instructed by Mr. Eure, who
has administered this law for many, many years. I base my answers
on my own opinion and as I have been instructed by Mr. Eure."

G.S. 78-2, Definitions, in (g) states that "the term 'securities' or
'security' shall include any * * * debenture * * *." G.S. 78-13 pro-
vides: "The Secretary of State shall keep and maintain a permanent
register of qualified securities and shall enter therein the names and
amounts of all securities, the privilege of offering which to the public
in the State of North Carolina has been granted by the Secretary of
State, and the date thereof, and such other data as the Secretary of
State may deem proper. All securities admitted to record and recorded
in such register shall be deemed, for the purpose of this chapter, to
have been fully qualified for sale in the State of North Carolina and
thereafter any person may lawfully sell or offer for sale any part of
such issue as recorded; subject, however, to the provisions of this
chapter. Such register shall be open to inspection by the public." G.S.
78-19, so far as relevant here, provides: "No dealer or salesman shall
carry on business in the State of North Carolina as such dealer or
salesman, or sell securities, including any securities exempted under

the provisions of § 78-3, unless he has been registered as dealer or salesman in the office of the Secretary of State pursuant to the provisions of this section. Every applicant for registration shall file in the office of the Secretary of State, pursuant to the provisions of this section, an application in writing, duly signed and sworn to, in such form as the Secretary of State may prescribe, giving particulars concerning the business reputation of the applicant."

The testimony of William W. Coppedge, Security Deputy in the office of the Secretary of State of North Carolina to the effect that a search of the books and records in the office of the Secretary of State disclosed that a number of debentures of Franks' Finance Company sold to certain persons in North Carolina were not registered in the permanent register in the office of the Secretary of State and that a similar search disclosed that Jack W. Franks had never made application for registration as a salesman or broker of securities in the office of the Secretary of State, while of a negative nature, was admissible in evidence. *Duren v. Arkansas State Board of Optometry,* 211 Ark. 565, 201 S.W. 2d 578, *Reh. Den.* 19 May 1947; *Brown v. State,* 150 Tex. Crim. App. 285, 201 S.W. 2d 50; Wigmore on Evidence, 3d Ed., Vol. 5, § 1633(6), p. 519.

Defendant contends that the trial court erred in permitting Coppedge, over his objections, to express an opinion that the debentures of Franks' Finance Company sold in this State to certain individuals were required to be registered in the office of the Secretary of State by G.S. Ch. 78 and that such sales by Franks' Finance Company were not exempt transactions.

G.S. 78-3 recites a long list of securities to which our Securities Law does not apply. G.S. 78-4 recites a long list of transactions exempted from the operation of our Securities Law.

G.S. 78-5 reads as follows: "It shall not be necessary to negative any of the aforesaid exemptions in any complaint, information, indictment or proceeding laid or brought under this chapter in either a court of law or equity, or before the Secretary of State, in either a civil or a criminal action or suit. The sale, unless the transaction is exempted from the operation of this chapter, of any security not exempt from the provisions of this chapter as hereinbefore provided and not admitted to the record and recorded as hereinafter provided, shall be *prima facie* evidence of the violation of this chapter and the burden of proof of any such exemption shall be upon the party claiming the benefit thereof."

G.S. 78-6, so far as relevant here, reads: "No securities except of a class exempt under any of the provisions of § 78-3 or unless sold in any

transaction exempt under any of the provisions of § 78-4 shall be offered for sale or sold within this State unless such securities shall have been registered by notification or by qualification as hereinafter defined * * *."

G.S. 78-23 sets forth punishment for a violation of our Securities Law.

*S. v. Hightower,* 187 N.C. 300, 121 S.E. 616, was a criminal prosecution tried upon an indictment charging J. H. Hightower and one H. H. Massey, president and cashier, respectively, of Central Bank and Trust Company located in Raleigh, North Carolina, with feloniously receiving money, checks, drafts or other property as deposits in said bank on 13 January 1922, when they and each of them had knowledge of the fact that said bank was insolvent and unable to meet its depository liabilities as they became due in the regular course of business, in violation of chapter 4, section 85, Public Laws 1921. The jury acquitted Massey and convicted Hightower. From a judgment of imprisonment, Hightower appealed. The Court, speaking by Stacy, J., began its opinion by quoting the relevant parts of section 85 of the statute, which is headed "Insolvent banks, receiving deposits in." The opinion then states that one of the essential elements of the offense condemned by the statute, which the State must prove beyond a reasonable doubt to obtain a conviction, is "(2) that the bank in question was insolvent at the time the alleged deposits were received therein." The opinion then goes on to state in substance that the principal evidence offered by the State is that of Clarence Latham, State Bank Examiner, and W. S. Coursey, an expert accountant, or auditor employed by the banking department to make an audit of the bank, to the effect that, in the opinion of said witnesses, the Central Bank and Trust Company was insolvent on 13 January 1922. These opinions were based upon an examination and investigation of the affairs of the bank, made by the two witnesses in the discharge of their official duties. Defendant assailed the competency of this evidence upon two grounds: First. Because the witnesses were allowed to express their opinions upon one of the essential facts necessary to constitute the offense charged, and which the jury alone was impaneled to decide. Second. Because, as a prerequisite to the expression of such opinions, the witnesses were not required to state the facts upon which they based their conclusions. The Court in its opinion, 187 N.C., at p. 304, 121 S.E., at p. 619, speaking to the subject said: "The business of examining banks undoubtedly falls within the classification of trades or pursuits, requiring special skill or knowledge, and hence one versed in its intricacies, we apprehend, should be permitted to speak as an expert. It is not

questioned, on the instant record, but that the two witnesses offered by the State are competent to speak as experts in their field or in their line of work." At p. 307 of our Reports, and at p. 620 of the Southeastern report, the Court said: "Applying these principles to the instant case, we think the better practice would have been for Latham and Coursey to have stated the facts or to have detailed the data observed or discovered by them, before drawing their conclusions or giving their opinions in evidence, but we shall not hold it for legal or reversible error that such was not required as a condition precedent to the admission of their opinions in evidence before the jury. *S. v. Felter,* 25 Ia. 75; *S. v. Foote,* 58 S.C. 218. Speaking to a similar question, in *Commission v. Johnson,* 188 Mass., p. 385, Bradley, J., said: 'By this form of examination no injustice is done, for whatever reasons, even to the smallest details, that an expert may have for his opinion can be brought out fully by cross-examination'." The Court held that where an expert has made a proper examination of bank's assets, he may testify that bank was insolvent at a certain date.

This Court made a similar holding in *S. v. Brewer,* 202 N.C. 187, 162 S.E. 363.

In *Bank v. Crowder,* 194 N.C. 331, 139 S.E. 604, the Court held that the admission of the testimony of an expert witness as to the entries found in the books of a bank kept by the cashier and their meaning was not improper.

The administration of our Securities Law manifestly falls within the classification of pursuits, requiring special knowledge, and "hence one versed in its intricacies, we apprehend, should be permitted to speak as an expert." The sole reference to Coppedge's qualifications in defendant's brief is, "the State did not show what, if any, qualifications William W. Coppedge had." Defendant on cross-examination elicited from Coppedge that he came to the Secretary of State's office in August 1961, and elicited further the qualifications he had in administering the Securities Law of the State as set forth above in quotations from his cross-examination and recross-examination. It seems manifest from such evidence that Coppedge was competent to speak as an expert in his line of work as Security Deputy in the office of the Secretary of State. The questions of what securities are exempted securities under G.S. 78-3, and of what transactions are exempted from the operation of our Securities Law under G.S. 78-4, and of what securities cannot be offered for sale or sold unless registered under G.S. 78-6 are questions of law. The questions of whether the debentures of Franks' Finance Company sold to individuals in this State in the instant case are exempted securities under G.S. 78-3, and of whether

such sales were transactions exempted from the operation of our Securities Law under G.S. 78-4, and of whether the debentures sold to individuals in this State in the instant case were of a class that should have been registered under G.S. 78-6 before being offered for sale or sold within this State are questions of fact. To illustrate: We have held that what constitutes practicing law by unauthorized persons is a question of law, but whether the particular acts and methods of the defendants constituted a violation of the statute prohibiting the practice of law by unauthorized persons is a question of fact. *Seawell, Attorney General v. Carolina Motor Club*, 209 N.C. 624, 184 S.E. 540. See *S. v. Pledger*, 257 N.C. 634, 127 S.E. 2d 337, to the same effect. The trial court properly permitted Coppedge, because of his superior knowledge and of his manifest qualifications, to express an opinion that the debentures of Franks' Finance Company sold in this State to certain individuals were required to be registered in the office of the Secretary of State under our Securities Law, and that such debentures were not exempted securities under our Securities Law, and that the sales of the debentures of Franks' Finance Company were not transactions exempted from the operation of our Securities Law.

Our conclusion finds support in our decisions of *S. v. Hightower, supra*, and *S. v. Brewer, supra*.

All defendant's assignments of error to the admission of evidence are overruled.

Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of all the evidence.

G.S. 78-23(b) provides: "Whoever shall sell or cause to be sold, or offer to sell or cause to be offered for sale, any security in this State, which is not exempt under any of the provisions of § 78-3, unless sold in any transaction exempt under any of the provisions of § 78-4, and which such securities so sold, or caused to be sold or so offered for sale or caused to be offered for sale shall not have been registered as provided in this chapter, shall be guilty of a violation of this chapter, and upon conviction thereof shall be imprisoned in the State prison for a period of not less than one, nor more than five years, or fined in any sum not more than one thousand dollars ($1,000), or both." The word "whoever," used in this statute, is all embracive and includes within its terms corporations, officers and agents of corporations, and all other persons.

It seems to be settled law that any officers, directors, or agents of a corporation actively participating in a violation of the provisions of G.S. 78-23 of our Securities Law in the conduct of the company's business, or which such conduct they have actively directed, may be held

criminally liable individually therefor. *S. v. Agey,* 171 N.C. 831, 88 S.E. 726; *State v. Fraser,* 105 Ore. 589, 209 P. 467; 19 C.J.S., Corporations, § 931; 53 C.J.S., Licenses, § 78, 13 Am. Jur., Corporations, § 1100. The State's evidence is amply sufficient to carry the case to the jury on the first count in the indictment. The second count in the indictment charges sales of debentures of Franks' Finance Company to Vivian M. Fulk and Lidia Duncan Clayton, but the record is bare of any evidence to support such charge of sales in the second count. The trial court erred in denying defendant's motion for judgment of compulsory nonsuit in respect to the second count in the indictment; consequently, the verdict of guilty on the second count in the indictment and the judgment imposed upon such conviction on the second count are vacated.

Defendant has a number of assignments of error to the charge. A careful study of the judge's charge to the jury fails to disclose any errors sufficiently prejudicial to warrant a new trial on the first count in the indictment.

The result is this: In the trial as to the first count in the indictment, we find no error; in the trial as to the second count in the indictment, reversed.

DENNY, C.J., took no part in the consideration or decision of this case.