STATE OF NORTH CAROLINA, EX REL. JOHN RANDOLPH INGRAM, COMMIS-
SIONER OF INSURANCE v. NORTH CAROLINA FARM BUREAU INSURANCE
AGENCY, INC.

No. 110

(Filed 2 June 1981)

1. **Insurance § 1— procurement of errors and omissions insurance—insurer not
licensed in N. C.—liability for premium tax**

    The Court of Appeals properly determined that defendant insurance agen-
cy "procured" errors and omissions insurance written by an insurer not li-
censed to do business in N. C. for various insurance agents in this State and
was therefore liable for the premium tax imposed by G.S. 58-53.3.

2. **Rules of Civil Procedure § 43; Witnesses § 7.1— leading questions—witnesses
who were agents for opposing party**

    Plaintiff had a right to ask leading questions of two witnesses called by
plaintiff who were agents or employees of defendant. G.S. 1A-1, Rule 43(b).

3. **Evidence § 31— best evidence rule—admission of auditor's summary**

    The trial court erred in excluding an auditor's summary of an examination
of defendant corporation's records on the ground that the records themselves
were the best evidence of defendant's business transactions where plaintiff
showed that the auditor was a qualified witness who had examined defendant's
records and that the records were so voluminous that their production was im-
practicable.

APPEAL by defendant from the decision of the Court of Ap-
peals reported in 50 N.C. App. 510, 274 S.E. 2d 497, reversing
*Judge Herring's* involuntary dismissal of plaintiff's action at the 4
February 1980 Session of WAKE Superior Court.

The Commissioner of Insurance brought this civil action on
behalf of the State to collect a five percent tax imposed by G.S.
58-53.3 on premiums collected by defendant for errors and omis-
sions insurance written for various insurance agents in North
Carolina by an insurance company not licensed to do business in
North Carolina.

G.S. 58-53.3 provides in pertinent part:

When any person *procures* insurance on any risk located in
this State with an insurance company not licensed to do
business in this State, it shall be the duty of such person to
deduct from the premium charged on the policy or policies

issued for such insurance five per centum (5%) of the premium and remit the same to the Commissioner of Insurance of the State. . . . [Emphasis added.]

At the conclusion of the State's evidence, defendant moved for an involuntary dismissal under Rule 41 of the Rules of Civil Procedure. The trial judge allowed the motion after finding facts and concluding as follows:

1. The plaintiff, John Randolph Ingram, is the duly elected Commissioner of Insurance for the State of North Carolina, and, pursuant to authority of N.C. G.S. § 58-9(5), is authorized and empowered, through the Attorney General of North Carolina, to institute civil actions for a violation of Chapter 58, North Carolina General Statutes.

2. The defendant, North Carolina Farm Bureau Insurance Agency, Inc., is a corporation organized and existing under and by virtue of the laws of the State of North Carolina.

3. Prior to 1972 Sequoia Insurance Company issued to American Agricultural Insurance Company, Inc. an "Errors and Omissions" master group insurance policy number EL-20-10-11.

4. Neither the Sequoia Insurance Company or the American Agricultural Insurance Agency, Inc. are licensed to do business in North Carolina.

5. During the period January 1, 1972, to December 31, 1978, and prior thereto, either Charles Houck or Paul Lancaster, both employees of the North Carolina Farm Bureau Mutual Insurance Company, Inc. (not a party to this action) received inquiries from sales agents of the North Carolina Farm Bureau Mutual Insurance Company, Inc., regarding the availability of errors and omissions insurance coverage for their agencies located in various parts of North Carolina.

6. Upon receiving the inquiries from the sales agents either Mr. Houck or Mr. Lancaster would, upon request, forward to said sales agents information regarding errors and omissions insurance coverage available from American Agricultural Insurance Agency, Inc.

7. During the period of time from January 1, 1972, to December 31, 1978, the defendant had no paid employees, salespersons or claim adjusters nor was there any evidence that anyone involved with the defendant was a licensed agent for the defendant, Sequoia Insurance Company, or American Agricultural Insurance Agency, Inc.

8. During the period of time from January 1, 1972, to December 31, 1978, neither the defendant nor anyone involved with defendant had the power or authority to bind coverage or countersign policies of errors and omissions insurance on behalf of American Agricultural Insurance Agency, Inc. or Sequoia Insurance Company under policy number EL-20-10-11.

9. During the period of time from January 1, 1972, to December 31, 1978, the defendant did not adjust any claims under errors and omissions insurance policy number EL-20-10-11.

10. During the period of time from January 1, 1972, to December 31, 1978, the defendant did not receive written applications for insurance under errors and omissions policy number EL-20-10-11.

11. During the period of time from January 1, 1972, to December 31, 1978, the defendant was not selling, binding coverage, or attempting to solicit the purchase of errors and omissions coverage under policy number EL-20-10-11.

12. While the defendant, through a manager or administrator, transmitted premiums and other data concerning the errors and omissions coverage between sales agents of the North Carolina Farm Bureau Mutual Insurance Company, Inc. and American Agricultural Insurance Agency, Inc., defendant's role was administrative or ministerial in nature.

Based on the above findings of facts the court makes the following conclusions of law:

1. During the period of time of January 1, 1972, to December 31, 1978, the defendant did not procure insurance, under policy number EL-20-10-11 on any risk located in North Carolina with an insurance company not licensed to do business in North Carolina.

2. The defendant is not liable for the premium tax imposed by N.C. G.S. § 58-53.3 for any premiums which might have been paid for errors and omissions insurance coverage under policy number EL-20-10-11.

The Court of Appeals in a majority decision by Judge Hill concurred in by Judge Wells reversed the trial court. The court held that the actions of defendant amounted to "procuring" and, therefore, the statutory tax applied. Judge Arnold dissented. Defendant appealed to this Court pursuant to G.S. 7A-30(2).

*Broughton, Wilkins & Crampton, P.A., by Robert B. Broughton and William S. Aldridge for defendant appellant.*

*Rufus L. Edmisten, Attorney General, by Richard L. Griffin, Assistant Attorney General for plaintiff appellee.*

BRANCH, Chief Justice.

[1] By its first assignment of error, defendant contends that the Court of Appeals erred in reversing the trial court's allowance of defendant's motion for involuntary dismissal. Defendant maintains that it did not "procure" insurance under G.S. 58-53.3.

We have carefully examined the majority opinion of the Court of Appeals as it relates to this assignment of error. We conclude that the authorities cited, the principles of law enunciated, and the reasoning of the majority opinion are correct and fully support the result reached on the question of law presented by this assignment of error. We therefore approve and adopt the majority decision which reversed the involuntary dismissal.

We turn now to the State's two assignments of error relating to evidentiary rulings of the trial judge. Although not necessary to decision, we elect to address the assignments of error not considered by the Court of Appeals because of the possibility they may arise in further proceedings in this matter.

[2] The State contends that the trial judge erred by ruling that the State could not ask leading questions of witnesses Paul J. Lancaster and Charles E. Houck who were called by the State. The State contends that under Rule 43(b) of the Rules of Civil Procedure if one party calls a witness who is an employee or agent of an adverse party, the party who calls the witness has a right to ask leading questions on direct examination.

Since this action is civil in nature and the statutes provide for no other procedure, the Rules of Civil Procedure govern this action. G.S. 1A-1, Rule 1. Rule 43(b) states:

> A party may interrogate any unwilling or hostile witness by leading questions and may contradict and impeach him in all respects as if he had been called by the adverse party. A party may call an adverse party or an agent or employee of an adverse party, or an officer, director, or employee of a public or private corporation or of a partnership or association which is an adverse party . . . and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party.

This language clearly gives the calling party a right to ask leading questions when it calls an agent or employee of an adversary party.

In this case the record shows the witnesses Lancaster and Houck were either agents or employees of defendant. Both admitted they acted as manager of defendant. Lancaster executed the verification of defendant's answers to the State's interrogatories. Whether denominated as agents or employees of defendant, we hold that the two witnesses come within the provisions of Rule 43(b), and the State had a right to ask leading questions of them on direct examination.

Defendant's citation of a criminal case for the proposition that the judge has discretion in permitting leading questions is inapposite since Rule 43(b) does not apply to criminal cases. *State v. Anderson*, 283 N.C. 218, 195 S.E. 2d 561 (1973).

[3] The State next contends that the trial judge erred by excluding a summary of a State auditor's examination of defendant-corporation's books. The trial judge ruled that the best evidence rule prohibited the State from offering the auditor's summary because the records themselves are the best evidence of defendant's business transactions. The State contends that the summary should have been admitted into evidence because an exception to the best evidence rule permits such an abridgement where the evidence is voluminous and examination difficult.

The best evidence rule, simply stated, is that "a writing is the best evidence of its own contents," and it requires "a party to

produce the writing itself, unless its nonproduction is excused, whenever its contents are to be proved." 2 Stansbury, North Carolina Evidence, § 190 (Brandis rev. 1973). In this case, to determine the amount of tax which defendant must pay, the State must show the total amount of premiums defendant collected for insurance it procured. G.S. 58-53.3. Since this amount can only be determined from an examination of defendant's business records, the best evidence rule requires production of those records unless an exception applies.

In a number of cases, this Court has applied the well-recognized exception to the best evidence rule where the records to be produced are voluminous. *State v. Franks*, 262 N.C. 94, 136 S.E. 2d 623 (1964); *State v. Rhodes*, 202 N.C. 101, 161 S.E. 722 (1932); 2 Stansbury, North Carolina Evidence, § 192 (Brandis rev. 1973). In the leading case of *State v. Rhodes, supra*, this Court said:

> [The exception] is founded on considerations of policy and convenience, if not of necessity . . . . Where a fact can be ascertained only by the inspection of a large number of documents made up of many detailed statements it would be practically out of the question to require the entire mass of documents and entries to be read by or in the presence of the jury. As such examination cannot conveniently be made in court the results may be shown by the person who made the examination. [Citations omitted.] The production of the documents and the privilege of cross examination and of the introduction of evidence afford ample protection of the defendant's rights.

*Id.* at 104, 161 S.E. at 723. To lay a proper foundation for this evidence, the cases require (1) a qualified witness who has examined the records and (2) a showing that "the documents are so voluminous that it would be impracticable to produce and examine them in court." 2 Stansbury North Carolina Evidence § 192 (Brandis rev. 1973).

In this case the State has shown sufficient foundation to invoke this exception. The witness, Richard B. Fields, identified himself as a Deputy Commissioner of Insurance, Field Audit Division, and he testified that in September, 1977, he audited defendant corporation's books. He testified that he examined checks,

premium notices and invoices among other papers. He said that he did not make copies of all the documents because "[i]n a normal audit of records of this type you would not make copies of every paper or every sheet that you review because of the volume of paper involved." Thus, the State met both foundation requirements; Fields was a qualified witness who had examined the defendant's records, and production of the records was impracticable. We therefore hold that the trial judge erred by failing to permit the auditor to testify to his findings. Defendant is sufficiently protected from any inaccuracy by its ability to cross-examine the auditor, to introduce the records which are in its custody, and to call its own qualified witness to testify to his findings.

The decision of the Court of Appeals as amended is

Affirmed.