IN THE MATTER OF THE ASSESSMENT OF ADDITIONAL INCOME TAXES AND INTEREST AGAINST VIRGINIA-CAROLINA CHEMICAL CORPORATION, RICHMOND, VIRGINIA, FOR THE FISCAL YEARS ENDED JUNE 30, 1952 AND JUNE 30, 1953.

(Filed 4 June, 1958.)

1. Taxation § 29—

Depreciation is the wearing out or obsolescence of property, the use-

ful life of which may be estimated with reasonable certainty; depletion is the exhaustion of a natural resource, and the time within which hidden resources, such as mineral deposits and oil, will be exhausted is highly speculative. Therefore, the law makes a distinction for income tax purposes between deductions for depreciation and for depletion.

**2. Same—**

Prior to the 1953 amendment to G.S. 105-147, the statute permitted a reasonable allowance for depletion without requiring that it should be calculated on percentage of cost, and the 1953 amendment made mandatory that which was permissible before.

**3. Taxation § 23½—**

The responsibility for interpreting a tax statute is placed on the Commissioner of Revenue, G.S. 105-264, and the Attorney General's opinion in regard thereto is advisory only. Constitution of North Carolina, Article III, Sec. 14; G.S. 114-2.

**4. Taxation § 29— Petitioner held to have properly based depletion of mines on percentage of income in accordance with federal practice.**

For the years prior to 1954 petitioner on its income tax returns based deductions for depletion of its phosphate mines on percentage of income, using the same method it used in its federal tax returns. G.S. 105-142. After the expiration of the tax period involved, the Commissioner of Revenue advised petitioner that the percentage of income method was not allowed by the statute, G.S. 105-147, and assessed additional taxes based upon depletion figured on percentage of cost. *Held:* In the absence of law or regulation to the contrary, the taxpayer's method of accounting and the federal practice control, and the Commissioner was without authority to make the retroactive regulation increasing petitioner's tax.

APPEAL by the Virginia-Carolina Chemical Corporation from *Sharp, S. J.,* November, 1957 Civil Term, WAKE Superior Court.

This cause was heard in the Superior Court upon petition to review decision No. 13 of the Tax Review Board affirming an assessment by the Commissioner of Revenue against the appellant for additional income taxes for the fiscal years ending June 30, 1952, and June 30, 1953. (G.S. 143-306, et seq.)

On April 5, 1955, the Commissioner of Revenue notified appellant that additional income tax was proposed for each of the years beginning July 1, 1947 through July 1, 1954, in the total amount of $20,495.31. The appellant taxpayer objected to the proposed assessment and requested a hearing. The Commissioner's amended decision upon the hearing recites: "This assessment was made pursuant to the provisions of G.S. 105-159, G.S. 105-160 and G.S. 105-241.1 and is based in part upon the report of the Federal Revenue Agent for the fiscal years June 30, 1947 to June 30, 1951 and upon office audits of this Department for the fiscal years ended June 30, 1952, 1953 and 1954. . . .

"It is therefore directed that the assessment of the additional tax and interest for each of the income years in question be and the same is hereby fully sustained."

The Tax Review Board, upon taxpayer's petition and after hearing, made findings of fact, among them:

"3. That Board finds that prior to the amendment to G.S. 105-147(8) by the General Assembly of 1953, depletion allowances, in the case of mines and other natural deposits, were required to be computed by using the original cost of the deposits and the cost of developing such deposits not otherwise deducted, or the book value of such assets as the amount to be recovered by a taxpayer over the estimated life of said assets. The Board further finds that percentage of income depletion is computed without reference to the original cost or the book value of the assets being depleted and that said percentage of income depletion was not authorized by law until July 1, 1953."

The Tax Review Board affirmed the Commissioner's decision. The taxpayer paid the tax under protest and appealed to the Superior Court of Wake County. By consent, trial de novo was had upon the record certified by the Tax Review Board, supplemented by the oral testimony of Mr. W. H. Hughes, Jr. The Superior Court made the following findings of fact:

"1. That Virginia-Carolina Chemical Corporation, a Virginia Corporation, is required to determine its income tax liability in accordance with the provisions of G.S. 105-134 II(1).

"2. That in determining the company's net income, subject to apportionment in this State, the company is permitted a deduction for depreciation and depletion allowances with respect to certain assets owned by the company during its income year.

"3. That prior to March 4, 1952, there had been no administrative practice on the part of the Commissioner of Revenue or his agents whereby percentage depletion was allowed as a deduction in determining net income and that there had been no formal rule or regulation adopted or promulgated by the Commissioner of Revenue authorizing the use of percentage depletion method in determining the deduction allowed for depletion.

"4. That there is no reasonable relation between actual depletion and percentage of gross income depletion in the case of mines and other natural deposits.

"5. That for the income tax years ending June 30, 1948 through June 30, 1953 the petitioner claimed as a deduction on its North Carolina income tax returns an item for depletion of its phosphate

mines; that the income tax returns filed by the petitioner for these years did not reflect the accounting method used in arriving at the amount claimed for depletion; and that for these income tax years the petitioner computed its depletion upon the basis of percentage depletion method.

"6. In the case of this petitioner's returns the Commissioner of Revenue, because of the lack of auditing facilities, accepted them without making a detailed audit of the depletion deductions.

"7. That for the income tax years ending June 30, 1952 and June 30, 1953 the Commissioner of Revenue by reason of the disallowance of the use of percentage income depletion issued an assessment against the petitioner in the total amount of $12,195.64 principal and $3,123.47 interest or a total of $15,319.11, and on June 12, 1957 the petitioner paid under protest the sum of $15,-319.11 to the Department of Revenue."

The court affirmed the decision of the Tax Review Board, and sustained the assessment. The taxpayer brought the case here upon its exceptive assignments which raised questions (1) whether the findings are supported by competent evidence, and (2) whether the facts found support the judgment.

*George B. Patton, Attorney General, Basil L. Sherrill, Assistant Attorney General, for the State.*

*Charles F. Blanchard for Virginia-Carolina Chemical Corporation, appellant.*

Higgins, J. The taxpayer is a foreign corporation. In connection with, and as a part of its business during the years involved, it operated a large phosphate mine in Florida and a smaller one in Tennessee. Although a substantial part of its other business was carried on in North Carolina, no phosphate mining was done here. This controversy involves the depletion allowance the taxpayer is entitled to deduct from its gross income on account of its phosphate mining operations.

In the taxpayer's returns the deductions for depletion, though not specifically detailed, were based on percentage of income. The Commissioner of Revenue contended such deduction was not permitted under North Carolina law. He levied the additional tax based on cost. The additional tax involved here represents the difference in the method of determining deduction for depletion — whether on percentage of income as contended by the taxpayer, or on percentage of cost as contended by the Commissioner.

In order properly to interpret the North Carolina statutes here involved, it is necessary to keep in mind the distinction between *de-*

*preciation* and *depletion. Depreciation* is the wearing out or obsolescence of property such as buildings, machinery, etc., used in a trade or business. Such property is in the open, subject to inspection, and its useful life may be estimated with reasonable certainty. On the other hand, *depletion* is the exhaustion of a natural resource. The amount of the original deposit is hidden from sight and necessarily is unknown. The percentage of the whole which is withdrawn in any year is, therefore, a "guesstimate." *U. S. v. Ludley,* 274 U.S. 295. For a full discussion, see Mertens, Law of Federal Income Taxation, sec. 24. The time when a building and a machine may be replaced and the cost of replacement can be estimated within reasonable limits. The time when a mineral deposit will be exhausted or a well will cease to produce is highly speculative. Mineral and oil taken from the earth cannot be replaced. In the case of mines, their use is an exhaustion of a capital asset. The law makes a distinction, therefore, between deductions for depreciation and for depletion.

Our statute, G.S. 105-147, provides: "In computing net income there shall be allowed as deductions the following items:

"8. A reasonable allowance for *depreciation and obsolescence* of property used in the trade or business shall be measured by the estimated life of such property; and in case of mines, oil and gas wells, other natural deposits and timber, *a reasonable allowance for depletion.* The cost of property acquired since January first, one thousand nine hundred and twenty-one, plus the additions and improvements, shall be the basis for determining the amount of *depreciation,* and if acquired prior to that date the book value as of that date of the property shall be the cost basis for determining *depreciation.*

"In cases of mines, oil and gas wells, and other natural deposits, the cost of development not otherwise deducted will be allowed as *depletion,* . . .

"In case the federal government determines *depreciation* or *depletion* of property for income tax purposes upon the basis of book value instead of original cost, the *depreciation* allowed under this article shall be upon the same basis." (emphasis added)

The emphasis is added for the purpose of pointing out that deduction on basis of percentage of cost is applicable to *depreciation* and not to *depletion. A reasonable allowance* is provided for *depletion.* There is no requirement it should be on the basis of cost.

The respondent virtually concedes as much in his brief: "The language of the above-quoted statute was not so clearly worded as to be completely free of doubt as to its meaning. However, both ap-

pellant and appellee agree that the gist of the statute, as it applies to the Virginia-Carolina Chemical Corporation tax for the years in question, is that the taxpayer is to be allowed a *reasonable allowance for depletion.*" (emphasis added)

The taxpayer for the years prior to June 30, 1954, based its deductions for depletion on percentage of income. It must be conceded, however, the returns did not show how the taxpayer calculated the deduction. The taxpayer used the same method, that is, percentage of income, in filing both its State and Federal tax returns. Although the Commissioner proposed to levy additional taxes for the years prior to June 30, 1954, based on percentage of cost rather than on percentage of income, nevertheless, in his final administrative decision he receded from his position for all years except those ending June 30, 1952 and June 30, 1953. The following explanation is given in the respondent's brief: "In summary, there were no rulings prior to 1952 by the Department of Revenue concerning depletion allowances. The correct analysis of the actions of the Department with respect to the three or four returns which had indicated for years prior to 1952 that percentage depletion had been taken as a deduction is that the Department of Revenue simply did not have sufficient auditors to pursue the matter, and the amounts involved were so small as to render investigation by the Department unprofitable, unless the Federal Bureau of Internal Revenue had indicated an adjustment should be made."

It is understandable why for practical reasons the North Carolina Department of Revenue should rely upon the tax returns accepted by the Federal Internal Revenue Service for a proper reflection of taxable income upon foreign corporations. It would seem the Commissioner's choice was limited to the following: (1) He could rely on the return of the taxpayer; (2) he could send accountants and experts to Florida and Tennessee to examine the mines; or (3) he could accept the determination made by the United States Internal Revenue Service, since the interests of both governments were identical—collection of taxes. Recognizing the necessity for following the last method, our General Assembly enacted G.S. 105-142:

"The net income of a taxpayer shall be computed in accordance with the method of accounting regularly employed in keeping the books of such taxpayer, but such method of accounting must be consistent with respect to both income and deductions, but if in any case such method does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income, *but shall follow as nearly as practicable the federal practice, un-*

*less contrary to the context and intent of this article."* (emphasis added)

The record in this case indicates that on February 25, 1952, for the first time, the Commissioner of Revenue officially inquired into the method of determining depletion allowance permitted under North Carolina law by addressing to the Attorney General the following inquiry:

"It has been the practice of this Department in the past to follow the Federal Department in its treatment of depletion methods and rates to be used by taxpayers in determining the deductible amounts on their income tax returns.

"The Federal Department permits several basic methods of which cost or fair market value is one, and percentage of gross income another, (The Federal Code, sec. 114,b). The percentage method has been permitted for oil and gas properties and for mining of various metals and minerals for some years."

&ast; &ast; &ast;

&ast; &ast; &ast;

"The Commissioner will appreciate . . . your opinion as to whether or not this Department can statutorily permit depletion on a basis other than cost or book value."

The Attorney General's reply to the Commissioner's inquiry is not in the record and consequently is not subject to our interpretation. However, the record does contain the Commissioner's interpretation in the form of two letters he addressed to the taxpayer. The first letter, dated December 1, 1954, contained the following: "An opinion of the Attorney General's office, rendered in March, 1952, ruled that it was improper under existing statutes to allow percentage depletion for North Carolina tax purposes. The North Carolina Legislature did, however, enact such a statute to apply to tax returns filed subsequent to June 30, 1953. In view of the aforementioned circumstances, it is requested that you furnish this office with the amount of depletion determined at 'cost' for each of the two years ending 6-30-52 and 6-30-53."

The second letter, dated January 20, 1955, contained the following: "The Attorney General advises that its opinion, as expressed in letter of March 4, 1952, relative to depletion, is still in order in that percentage of income depletion could not have been allowed under the provisions of our Statute prior to the amendment which became effective June 1, 1953, which provided for the allowance of percentage depletion for the mining of certain specific minerals. We would like to point out, however, that the Commissioner has administratively accepted returns where percentage of income depletion was deducted

for the years ending prior to the Attorney General's ruling, but has consistently disallowed percentage depletion for the period intervening between the date of the ruling and the date of the amendment to the law. Under the circumstances the Department is holding that percentage of income depletion would not be permissible for the years ending June 30, 1952 and June 30, 1953."

Whether the Commissioner properly interpreted the Attorney General's views is immaterial insofar as decision here is concerned. The responsibility of decision was placed on the Commissioner. As of the date involved, G.S. 105-264 provided: "It shall be the duty of the Commissioner of Revenue to construe all sections of this sub-chapter imposing . . . income or other taxes." (For subsequent amendments, see Ch. 1350, Session Laws of 1955; and Ch. 1340, Session Laws of 1957.) The Attorney General's opinion was advisory. Article III, Sec. 14, Constitution of North Carolina; G.S. 114-2; *Lawrence v. Shaw,* 210 N.C. 352, 186 S.E. 504.

It is conceded the Commissioner did not promulgate any rule or regulation with respect to the method by which reasonable allowance for depletion might be determined unless his letters of December 1, 1954, and January 20, 1955, may be so construed. These letters were written long after the expiration of the tax period here involved, after the taxpayer had made its returns and calculated and paid the tax in accordance with its own system of accounting and the method sanctioned by the "federal practice." This our State law permitted. In the absence of his own ruling to the contrary, in effect at the time, the Commissioner was without power to make a retroactive regulation increasing appellant's tax.

Analysis of the statutes in effect during the periods here involved leads to the conclusion that the cost method of determining deductions applied alone to property subject to depreciation and obsolescence, and did not apply to phosphate mines which were subject not to allowance for depreciation, but for depletion. Under the specific provisions of North Carolina law the taxpayer was permitted to calculate the deduction according to its own system of accounting, following the Federal practice. This view is supported by amendment to G.S. 105-147, Ch. 1031, Session Laws of 1953, which provided: "Notwithstanding any other provisions of this section, the allowances for depletion . . . in the case of certain mines and other natural deposits . . . shall be a certain per centum of the gross income from the property during the taxable year . . . (including phosphate rock) . . . ." The amendment seems to have made mandatory that which was permissible before—percentage of income depletion. The amendment was passed at the first session of the General Assembly following the Attorney General's letter to the Commissioner. The timing of the

amendment and its contents strongly suggest it was intended as a legislative interpretation of existing law which the Commissioner had misinterpreted. The Session Laws of 1955, Ch. 1331, further amended G.S. 105-147 by providing: "The basis for determining the allowance for depletion shall be the book value of the property in all cases in which the Federal Government uses book value to determine the deduction allowance by it for depletion under the provisions of the Internal Revenue Code of 1954." The Revenue Code, Sections 11 and 12, provides for depletion of certain property on the basis of cost. However, Section 613 specifically provides that the allowance for depletion of phosphate mines shall be upon the basis of percentage of income.

The appellee on the argument conceded that the court's finding of fact No. 3 must be sustained in order to affirm the judgment. The essence of the finding is that prior to March 4, 1952, the Commissioner of Revenue had neither established an administrative practice nor had promulgated any rule or regulation authorizing the taxpayer to use percentage of income as a method of determining its depletion allowance. The answer is the taxpayer did not need a rule or regulation of the Commissioner permitting it to determine its deduction for depletion on the basis of percentage of income. The law gave the permission. In the absence of law or regulation to the contrary, the taxpayer's method of accounting and the Federal practice controlled. Both provide for depletion on the basis of percentage of income. The Commissioner did not contend and the court did not find that percentage of income would provide an unreasonable deduction for depletion. The record is clear that the Commissioner levied the additional tax upon the theory that the State law did not permit the deduction on the percentage of income basis but, on the contrary, required the deduction to be made on the basis of cost—a mistaken view of the law.

The evidence is insufficient support for the court's finding No. 3. The Commissioner was without authority to levy the additional tax. The judgment of the Superior Court of Wake County is
  Reversed.