STATE OF NORTH CAROLINA v. BETTY AGNEW

No. 75

(Filed 7 March 1978)

1. Criminal Law § 104— nonsuit—scintilla of evidence rule

If more than a scintilla of evidence is presented to support the indictment, the case must be submitted to the jury.

2. False Pretense § 1— obtaining property by false pretense—elements

A motion for nonsuit of a charge of obtaining property by false pretense must be denied if there is evidence which, if believed, would establish or from which the jury could infer that the defendant (1) obtained value from another without compensation, (2) by a false representation of a subsisting fact, (3) which was calculated and intended to deceive and (4) did in fact deceive.

3. False Pretense § 3.1— director of county Department of Social Services—insufficiency of evidence of obtaining money by false pretense

The evidence was insufficient for the jury in a prosecution of the director of a county Department of Social Services for obtaining money from the county by false pretense either (1) under the theory that defendant falsely represented to the county that she was entitled to reimbursement for the costs of a business trip when, in fact, she had used funds advanced from a Department of Social Services checking account and was seeking to recover the same money twice, since the uncontradicted evidence showed that the Department account was used only for advances which were to be repaid when the employee received reimbursement from the county, and the representation by defendant that she was entitled to reimbursement of the funds spent on the business trip was not false at the time it was made; or (2) under the theory that defendant had received cash from two other women for their por-

tion of the cost of a hotel room and had sought a double recovery when she filed her expense report, since the expense statement disclosed that defendant sought only one-third of the cost of the room in her claim for reimbursement.

**4. False Pretense § 3.1— false representation of future event—no crime before 1975 amendment of statute**

A charge of obtaining money by false pretense prior to the 1975 amendment of G.S. 14-100 which added false representations of future events to the statutory prohibition could not be supported by evidence that defendant received a travel advance from a Department of Social Services checking account, and that defendant did not intend to repay the advance when she filed for reimbursement of her travel expenses by the county and thus by implication falsely represented the use to which the funds would be put when received, since such a representation pertained to a future event and was not a violation of the false pretense statute at the time it was made.

**5. Embezzlement § 6— director of county Department of Social Services —evidence sufficient for the jury**

The evidence was sufficient for the jury in a prosecution of the director of a County Department of Social Services for embezzlement in violation of G.S. 14-90 where it tended to show that defendant received some $1,314.74 in advances from the Department checking account, repayment of which, as of the date of an audit, could not be traced by cash receipts or bank deposit slips; defendant had control of the checking account; $430.75 had been drawn from the account to cover the cost of a business trip to Boston to attend a conference; defendant was reimbursed by the county for the expenses of the trip; five days after notice to the Department of the audit, defendant gave $900.00 in cash to one of her employees and told her that it represented repayment of defendant's advances; when the auditors first requested to see all the cash on the premises, defendant had $314.05 on hand; upon being informed by the auditors that they were unable to account for approximately $100.00 in cash, defendant subsequently showed them $100.00 in cash, telling them it had initially been overlooked; the reimbursement for the Boston trip was not deposited back into the Department checking account until seven months after the date of the check to defendant and over two months after defendant received notice of the audit; after receiving notice of the audit, defendant obtained back-dated checks from two women who shared a hotel room with her in Boston for their portion of the room cost; the auditors discovered a $180.75 disbursement from the Department account for which no corresponding check could be found; check number 459 could not be found in the bank statements and its stub had been marked "void" in the check book; defendant later found check 459, which was made out to a hotel for $180.75, and told the auditors it was used to pay the hotel bill for the Boston trip; and at this time, neither the two back-dated checks from defendant's companions nor defendant's check for her share of the hotel bill had been deposited back in the Department account, since the jury could find from the timing of the payments that defendant converted the funds to her own use and, when the danger of discovery became imminent, sought to return the money to conceal her wrongdoing, and the jury could find from the procurement of the back-dated checks, discrepancies in cash on hand and irregularities in the check book records that defendant had

guilty knowledge and converted or misapplied the funds with a fraudulent intent.

**6. Public Officers § 11— misapplication of county funds—federal aid to the blind funds paid to Department of Social Services**

Federal aid to the blind administrative funds which were paid to a county Department of Social Services were held in trust by the Department for the county and, therefore, could properly be the subject of an indictment under G.S. 14-92 for the willful and corrupt misapplication of county funds.

**7. Public Officers § 11— misapplication of county funds—advances to employee—reckless disregard of purposes for which advances to be used**

The State's evidence was sufficient for the jury in a prosecution of the director of a county Department of Social Services for the willful and corrupt misapplication of county funds where it tended to show that defendant made advances to an employee from funds held to pay the administrative expenses of the aid to the blind program in the county, the employee used the advances to pay her rent and for vacation expenses, and defendant did not ask the employee why she wanted the advances but gave them to her merely because she requested them.

**8. Public Officers § 11— misapplication of county funds—knowledge by supervisory board**

The fact that a supervisory board has knowledge of a subordinate's unlawful use of public moneys does not excuse or justify the subordinate's unlawful misapplication of the funds.

**9. Criminal Law § 80— entries in records under defendant's control—admissibility against defendant**

Entries in records of a Department of Social Services maintained under the direction of defendant and checking account records controlled solely by defendant were admissible against defendant in her trial for obtaining money by false pretense, embezzlement, and misapplication of county funds.

**10. Criminal Law § 82— no accountant-client privilege in N. C.**

The trial court erred in refusing to require a witness to answer questions for the record when the witness asserted an accountant-client privilege, since North Carolina does not recognize such a privilege. However, such error was not prejudicial to defendant where nothing material would have been shown if the witness would have answered the questions.

**11. Criminal Law § 99.1— comments by court—no expression of opinion**

The trial court's comments did not constitute an expression of opinion but were reasonable efforts to maintain progress and proper decorum in a prolonged and tedious trial.

**12. Criminal Law § 119— requests for instructions—when required to be made**

While the trial judge should not have rejected instructions submitted by defendant shortly before the court was to charge the jury on the ground that they had been tendered too late, since G.S. 1-181 requires only that written requests for special instructions be submitted before the judge begins his

charge, defendant was not prejudiced thereby where the instructions in substance stated all the relevant and legally correct propositions requested by defendant.

　　Justice EXUM dissenting.

DEFENDANT, on indictments proper in form, was charged with and convicted of obtaining property by false pretense, embezzlement and willful misapplication of funds. We granted the State's petition for discretionary review of the decision of the Court of Appeals, 33 N.C. App. 496, 236 S.E. 2d 287 (1977); (Martin, J., concurred in by Britt and Parker, JJ.), reversing the judgment of *Cowper, J.*, May 1976 Criminal Session BEAUFORT County Superior Court, for failure to grant defendant's motions for nonsuit. This case was docketed and argued during Fall Term 1977 as No. 98.

Defendant here was director of the Beaufort County Department of Social Services. The crimes charged by these indictments concern alleged irregularities surrounding a checking account maintained by this Department.

The State's evidence tended to show the following:

Defendant had sole control of this checking account which contained funds received from the North Carolina Blind Commission for use in administering the Department's aid to the blind program, money earned by work release prisoners for distribution to their families, funds received from other counties for care of foster children being housed in Beaufort County, donations, court ordered support payments, and refunds from welfare clients who had been overpaid by the county. The so-called "blind money" was received by the Department of Social Services through 1971, but thereafter, pursuant to an opinion issued by the Attorney General of North Carolina, these funds were delivered to the county to be deposited directly into the county treasury.

On 15 July 1975 the Department of Social Services received a letter from the Board of County Commissioners stating that the county had contracted for an audit of all its departments for the fiscal year ending 30 June 1975. This audit subsequently revealed that as of 18 August 1975 defendant had received $1,314.75 in advances from the checking account, repayment of which could not be independently traced through cash receipt books or bank

deposit slips. It further appeared that $430.75 had been drawn from the account to cover the costs of a business trip to Boston made by defendant in October of 1974 to attend a conference on child abuse. Defendant filed for reimbursement from the county for the costs of this trip and on 28 February 1975 she was issued a check which included $434.63 for these expenses.

It was also disclosed that defendant had expended $1,128.94 from the account for items such as food for staff parties, two coffee pots for the office, magazine subscriptions, gifts and flowers for county commissioners and other officials and advances to Department employees for vacation and living expenses.

After receiving notice of the impending audit, on 20 July 1975 defendant called one of her employees, Sue Modlin, into her office and handed her $900.00 in cash, saying it represented repayment of defendant's advances. Defendant then directed her to find some client refunds to be repaid to the county accountant's office for that amount of money and use the cash to pay them, which was done.

Defendant's evidence tended to show that:

This account was already in existence in 1968 when defendant became director of the Department. She maintained that the blind money was discretionary and could be used for any purpose in the administration of the Department of Social Services. Other than the blind money and donations for various specific functions, this account was used as a pass-through account to channel the work release, foster care, support, and client refund moneys delivered to the Department to the proper recipients. The discretionary funds were used to pay office expenses and make advances to Department employees when their travel expense reimbursement checks were delayed. Defendant testified that the Board of Social Services was aware of and approved the practice of making travel advances. Defendant further stated that advances from the checking account were often repaid in cash and used for other Department expenditures without being repaid into the account.

Additional facts relevant to the decision are related in the opinion.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General William F. Briley for the State.*

*Wilkinson and Vosburgh, by John A. Wilkinson for defendant-appellee.*

COPELAND, Justice.

After careful consideration of the evidence in this case, we have determined that defendant's motion for judgment of nonsuit as to the charge of obtaining property by false pretense should have been allowed; however, the trial court's denial of the motions for nonsuit of the charges of embezzlement and willful misapplication of .funds was proper. We have examined defendant's assignments of error concerning the conduct of the trial and found them to be without merit. The decision of the Court of Appeals, consequently, is affirmed in part and reversed in part.

[1] In ruling on a motion for judgment of nonsuit, the evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Bell,* 285 N.C. 746, 208 S.E. 2d 506 (1974). The court in considering such a motion is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight. *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971). Moreover, all evidence admitted during the trial, whether competent or incompetent, which is favorable to the State must be taken as true, *State v. Roseman,* 279 N.C. 573, 184 S.E. 2d 289 (1971), and any contradictions or discrepancies therein must be resolved in the State's favor. *State v. Evans,* 279 N.C. 447, 183 S.E. 2d 540 (1971). Defendant's evidence which tends to rebut the inference of guilt may be considered when it is not inconsistent with the State's evidence. *State v. Blizzard,* 280 N.C. 11, 184 S.E. 2d 851 (1971). Nonetheless, if more than a scintilla of evidence is presented to support the indictment, the case must be submitted to the jury. *State v. Kelly,* 243 N.C. 177, 90 S.E. 2d 241 (1955).

[2] A motion for nonsuit of a charge of obtaining property by false pretense must be denied if there is evidence which, if believed, would establish or from which the jury could reasonably infer that the defendant (1) obtained value from another without compensation, (2) by a false representation of a subsisting fact, (3) which was calculated and intended to deceive and (4) did in fact

deceive. *State v. Davenport*, 227 N.C. 475, 42 S.E. 2d 686 (1947). We note that G.S. 14-100, which defines this crime, was amended subsequent to the date of the acts charged here so that false representations of future fulfillments or events are now also prohibited.

[3]   The State's theory, as pointed out by the Court of Appeals, appears to be that defendant falsely represented to the county that she had expended her personal funds for the costs of the Boston trip and was entitled to reimbursement, when in fact she had used funds advanced from the Department of Social Services account to cover these expenses and thus was seeking to recover the same money twice. An examination of all the evidence presented rebuts this, however, since it was uncontradicted that the Department checking account was not responsible for travel expenses, but was used only for occasional advances which were to be repaid when the individual employee received his or her reimbursement check from the county. The representation by defendant that she was entitled to reimbursement of the funds spent on the Boston trip, therefore, was not false at the time it was made and this essential element of the crime is not supported by any evidence in the record.

The State further argues that, because defendant had shared a hotel room with two other women attending the conference and had received cash from them in payment of their portion of its cost, she had actually claimed for a double recovery when she filed her expense report. This too is not supported by the evidence, since an examination of the expense statement submitted by defendant to the county discloses that only one-third of the total cost of the room was included in her claim for reimbursement.

[4]   The evidence also showed that defendant, after receiving notice of the impending audit, obtained back-dated checks from the women who shared the room with her in Boston and that the reimbursement received by defendant from the county was not deposited back into the Department checking account until over two months after she was notified of the audit. This could support a reasonable inference that when defendant filed for reimbursement she never intended to return the money to the Department account and thus by implication falsely represented the use to which the funds would be put when they were received. Such a

representation, however, would pertain to a future fulfillment or event, rather than a past or subsisting fact. The amendment to G.S. 14-100 which added false representations of future events to the statutory prohibition became effective 1 October 1975, some seven months after the reimbursement check was issued by the county; therefore, the representation by defendant here was not a violation of the false pretenses statute at the time it was made, since prior to the enactment of this amendment promises of future action could not be the basis of a prosecution under this statute. *State v. Hargett*, 259 N.C. 496, 130 S.E. 2d 865 (1963). Consequently, it is our conclusion that defendant's motion for judgment of nonsuit as to the charge of obtaining property by false pretenses should have been granted.

[5] The State next contends that there was sufficient evidence to go to the jury on the charge of embezzlement. The crime of embezzlement was unknown to the common law and is defined solely by statute. *State v. Ross*, 272 N.C. 67, 157 S.E. 2d 712 (1967). Under G.S. 14-90, "If any person exercising a public trust or holding a public office, or any . . . trustee . . . or any other fiduciary . . . or any agent, . . . except persons under the age of sixteen years, of any person, shall embezzle or fraudulently or knowingly and willfully misapply or convert to his own use, or shall take, make away with or secrete, with intent to embezzle or fraudulently or knowingly and willfully misapply or convert to his own use any money, goods or . . . check . . . belonging to any other person . . . or organization which shall have come into his possession or under his care . . ." he shall be guilty of the felony of embezzlement.

In the instant case, the State's evidence tended to show that: Defendant had received some $1,314.74 in advances from the Department checking account, repayment of which, as of the date of the audit, could not be traced by cash receipts or bank deposit slips. Five days after the Department was notified of the audit, defendant gave $900.00 in cash to one of her employees and told her that it represented repayment of defendant's advances. When the auditors first requested to see all the cash on the premises, defendant had $314.05 on hand. Upon being informed by the auditors that they were unable to account for approximately $100.00, defendant subsequently showed them cash in the amount of $100.00, telling them it had initially been overlooked. The reim-

State v. Agnew

bursement for the Boston trip received by defendant from the county was not deposited back into the Department checking account until seven months after the date of the check to defendant and over two months after defendant received notice of the impending audit. When the auditors first examined the Department's checking account records, they discovered a $180.75 disbursement from the account for which no corresponding check could be found. Check number 459 could not be found in the bank statements and its stub in the check book had been marked "Void." Defendant later found check number 459, which was made out to Statler-Hilton in the amount of $180.75, and presented it to the auditors, telling them it was used to pay the hotel bill for the Boston conference. At this time, neither the two back-dated checks from defendant's companions on the trip nor defendant's check for her share of the hotel bill had been deposited back into the Department account. At some point during the course of the audit, the control card on which defendant recorded her personal advances from the account was altered by the addition of an extra column, apparently for approvals, in which appeared the initials of the chairman of the Board of County Commissioners.

The Court of Appeals held that there could have been no fraudulent conversion here because the allegedly missing funds were on hand for disbursement at the proper time. It is no defense to a prosecution for embezzlement, however, that the defendant intended to return the property obtained or was able and willing to do so at a later date. *State v. Howard*, 222 N.C. 291, 22 S.E. 2d 917 (1942); *State v. Summers*, 141 N.C. 841, 53 S.E. 856 (1906). Moreover, the element of fraudulent intent necessary to sustain an embezzlement conviction may be established by evidence of facts and circumstances from which it reasonably may be inferred, as well as by direct evidence. *State v. McLean*, 209 N.C. 38, 182 S.E. 700 (1935).

Defendant sought to show at trial that she had repeatedly requested bookkeeping help in her Department from the Board of County Commissioners. Yet, defendant testified that the number of budgeted positions in the county Department of Social Services had increased from 19 at the time she became director in 1968 to 62 at the time of trial. While the lack of a competent bookkeeper might arguably tend to negative fraudulent intent, this would be rebutted by the inference that someone competent to handle the

ten to fifteen minutes' work per week this account required could have been found among these additional employees.

Considering the evidence set out above in the light most favorable to the State, we conclude that the jury reasonably could have found from the timing of the payments of the various amounts by defendant that she had converted the funds to her own use and, when the danger of discovery became imminent, sought to return the money to conceal her wrongdoing. Further, the procurement of the back-dated checks, together with discrepancies in the amount of cash on hand and irregularities in the check book records, would tend to show guilty knowledge on the part of defendant and allow the jury to infer that the funds had been converted or misapplied with a fraudulent intent. We hold, therefore, that the motion for nonsuit of the charge of embezzlement was properly denied by the trial court.

[6] Defendant was also charged, under G.S. 14-92, with willfully and corruptly using and misapplying $1,128.94 for purposes other than those for which it was held. It is her contention that the motion for nonsuit of this indictment should have been granted because the State failed to show that the moneys which she allegedly misapplied were funds belonging to or held in trust for the county. It was further held by the Court of Appeals that the State offered no proof that the alleged misapplication was willful or corrupt.

Defendant argues that the blind funds in the Department checking account were not county money because through 1971 they had been delivered to the county Department of Social Services, rather than the county treasury. The State's evidence shows that this money consisted of federal funds distributed by the North Carolina State Commission for the Blind to help defray the costs of administering the aid to the blind programs in the county. The practice of disbursing this money to the county Department of Social Services office rather than to the county treasury was based on a 1948 opinion of the Attorney General of North Carolina. In 1971, however, the Attorney General issued an opinion, 41 Op. Att. Gen. 329 (1971), which concluded that these funds should be made payable to the county treasuries and not to the county Boards or Departments of Social Servies. It is defendant's position that all such funds received prior to this change in procedure were not moneys belonging to or held in trust for the

county and, therefore, they could not be the subject of an indictment under G.S. 14-92.

An Opinion, of the Attorney General, however, is merely advisory. *In re Assessment of Additional Taxes against Virginia-Carolina Chemical Corporation*, 248 N.C. 531, 103 S.E. 2d 823 (1958). If, under the law, the funds were properly owed to the county, the payment to the Department of Social Services would be in trust for the county, presumably to be used by the Department for administration of the aid to the blind program. Since the 1971 Attorney General's opinion appears to be correct in finding that the funds were earned on county time by county employees and therefore were moneys "belonging to the county" under G.S. 155-7, and further because defendant does not assert that this finding was erroneous, we adopt its conclusion as our own. Thus we find that the federal aid to the blind administrative funds were indeed moneys owed to the county treasury and were to be held in trust for the county upon their receipt by the county Department of Social Services.

[7] We next consider the determination of the Court of Appeals that the State here failed to show any willful or corrupt misapplication of these county funds. Since the State need not prove embezzlement or misapplication of the entire sum alleged in the indictment, *State v. Ward*, 222 N.C. 316, 22 S.E. 2d 922 (1942), we need review only one segment of the State's evidence to establish the requisite elements of the crime charged. There was testimony tending to show that one of the Department employees, Sue Modlin, was advanced funds by defendant from the Department checking account on two specific occasions for purposes which were entirely unrelated to her employment. The first of these advances was in the amount of $75.00 and was used by Mrs. Modlin to pay her rent. The second was for $100.00, which was used for vacation expenses. Defendant testified that all such advances came from the blind money and that she regarded the uses to which these funds were put as entirely within her discretion. Defendant further stated that she did not ask Mrs. Modlin what she wanted the advances for, but gave them to her merely because she requested them.

The words "willfully" and "corruption", as they relate to misapplication of funds under G.S. 14-92, have been defined as "[D]one with an unlawful intent," and "The act of an official or

State v. Agnew

fiduciary person who unlawfully and wrongfully uses his station or character to procure some benefit for himself or for another person, contrary to duty and the rights of others." *State v. Shipman*, 202 N.C. 518, 540, 163 S.E. 657, 669 (1932). Although these advances appear to have been repaid to the account, it is clear that their disbursement for such purely personal uses had nothing to do with defraying the administrative expenses of the aid to the blind program in Beaufort County. Such blatant misapplication of these funds, coupled with defendant's apparent reckless disregard for the purposes for which they were to be used, lead us to conclude that the jury could reasonably have inferred the necessary elements of willfulness and corruption from the facts presented.

Typical of the items purchased from this account under alleged misapplications were a gift for a State Department of Social Services official, pumpkin pies for the county Department of Social Services staff at Thanksgiving, $50.00 worth of Christmas decorations for the office, and food for the staff Christmas party.

[8] Defendant has also attempted to show that many of these items were approved by the county Board of Social Services and thus were not misapplications of Department funds. The fact that a supervisory board has knowledge of a subordinate's unlawful use of public moneys, however, does not excuse or justify one who knowingly misapplies such funds unlawfully. *State v. Linden*, 171 Wash. 92, 17 P. 2d 635 (1932); *Glasheen v. State*, 188 Wis. 268, 205 N.W. 820 (1925). For the reasons set out above, defendant's contention that this charge should have been dismissed is without merit.

Defendant assigns many errors concerning the admission and exclusion of evidence by the trial court. Chief among these was the admission at the conclusion of the State's case, of checks, check stubs, audit reports, working papers, client refund receipts ledgers and other documents. Defendant argues that many of these exhibits contained irrelevant and incompetent material and that they were not properly authenticated.

[9] We have carefully examined these documents, however, and find nothing substantially prejudicial among the allegedly irrelevant portions thereof. Moreover, a review of the record discloses that each of the challenged exhibits had been authenticated before its introduction. The majority of these documents were ob-

tained from defendant by Claude Green, an investigator with the North Carolina Department of Justice, and consisted of records kept in the county Department of Social Services office under defendant's supervision. Entries in corporate books or records are admissible in evidence against the officers of the corporation in a criminal prosecution if there is evidence tending to show that some actual connection exists between the officers and the contents other than their mere status as corporate officers. *State v. Franks*, 262 N.C. 94, 136 S.E. 2d 623 (1964). This principle, logically extended to the case *sub judice*, clearly supports the admission of the documents Mr. Green obtained from defendant, since the county Department's books were maintained under the direction of defendant and the checking account records were controlled solely by her.

The remainder of the exhibits were properly identified by persons who either prepared them or received them from defendant and turned them over to Mr. Green. Defendant's assignment of error regarding the admission of the State's documentary evidence, therefore, is overruled.

During the cross-examination of the accountant who conducted the county audit, the trial court sustained objections to questions concerning whether the witness was an officer of the Washington Daily News Corporation and whether his firm did the accounting work for the Washington Daily News. Counsel for defendant then sought to have the answers to these questions placed in the record, at which time the witness asserted an accountant-client privilege. The court, on the basis of this claim, refused to order the witness to answer for the record. Defendant argues that this was an undue restriction of cross-examination and was seriously prejudicial.

[10] We agree that the court's refusal to require the witness to answer for the record was error, since North Carolina recognizes no accountant-client privilege. 1 Stansbury's N.C. Evidence (Brandis Rev. 1973), § 54, p. 160. Nonetheless, even if the witness had answered these questions, nothing material would have been shown. Defendant maintains that she would have been able to demonstrate the relevance of this evidence if she had been allowed to proceed. We note, however, that the court did not prohibit this entire line of questioning. Counsel for defendant merely failed to pursue it further after he was initially rebuffed. Under

these circumstances, we cannot speculate as to what questions defendant might have propounded to this witness. Since defendant has failed to demonstrate prejudice, this assignment of error is without merit.

New trial will not be awarded absent a showing of error so substantial that a different result likely would have ensued. *State v. Cross*, 284 N.C. 174, 200 S.E. 2d 27 (1973). We have carefully reviewed defendant's remaining assignments of error concerning the trial court's evidentiary rulings and found none so prejudicial as to warrant new trial; therefore, they are overruled.

[11] Defendant next contends that the trial judge, by various comments in the presence of the jury, impermissibly expressed an opinion prejudicial to her in violation of G.S. 1-180. It is the duty of the trial court to supervise and control the course of the trial, including the examination and cross-examination of witnesses, so as to insure justice for all parties. *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974). After examining the statements challenged by defendant as violative of G.S. 1-180, we conclude that they were reasonable efforts on the part of the trial judge to maintain progress and proper decorum in what was evidently a prolonged and tedious trial. This assignment is likewise without merit and overruled.

[12] Defendant's final group of assignments concerns the trial court's charge to the jury. She contends that the trial judge erred in failing to give certain specific instructions requested by her. She further argues that the court did not adequately review the evidence or relate the law to the facts. The requested instructions were submitted to the court shortly before it was to charge the jury, at which time the judge stated that he would not read them to the jury because they had been tendered too late. This was not a proper basis upon which to reject the instructions, since G.S. 1-181 requires only that written requests for special instructions be submitted before the judge begins his charge.

A defendant is not entitled to have his requested instructions given verbatim, so long as they are given in substance. *State v. Howard*, 274 N.C. 186, 162 S.E. 2d 495 (1968). Moreover, the court may totally refuse instructions based on an erroneous statement of the law, *State v. Smith*, 237 N.C. 1, 74 S.E. 2d 291 (1953), or which concern issues irrelevant to the case. *State v. Smith*, 202

N.C. 581, 163 S.E. 554 (1932). We find in reviewing the record that in substance the court's instructions stated all the relevant and legally correct propositions requested by defendant. In addition, the court's review of the evidence, while concise, was accurate and sufficient to permit the jury to comprehend the issues they were to decide. This group of assignments, consequently, is over-ruled.

In summary, we have determined that there was insufficient evidence to go to the jury on the charge of obtaining property by false pretenses; however, the motions for nonsuit of the charges of embezzlement and willful misapplication of funds were proper-ly denied. Further, the remaining assignments of error here reveal nothing of sufficient prejudice to merit a new trial. The decision of the Court of Appeals holding that the charge of obtain-ing property by false pretense should have been dismissed is affirmed. The holding that the embezzlement and willful misap-plication of funds charges should have been dismissed is reversed.

Affirmed in part and reversed in part.

Justice EXUM dissenting.

While there may be statements in earlier cases that "more than a scintilla of evidence" is enough in a criminal case to sur-vive a motion for nonsuit, *see State v. Kelly*, 243 N.C. 177, 90 S.E. 2d 241 (1955), relied on by the majority for this test, our more re-cent cases have correctly stated that the true test is whether there is "substantial evidence—direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the accused committed it." *State v. Stewart*, 292 N.C. 219, 224, 232 S.E. 2d 443, 447 (1977); *accord, State v. White*, 293 N.C. 91, 235 S.E. 2d 55 (1977); *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1976); *State v. Cousin*, 291 N.C. 413, 230 S.E. 2d 518 (1976); compare the citations supporting the "more than scintilla" test with those supporting the "substantial evidence test" in Strong's N.C. Index 3d, Criminal Law § 106, p. 548, nn. 61-63. In its consideration of this case the Court of Appeals correctly ap-plied the substantial evidence test, relying on our decision in *State v. Evans*, 279 N.C. 447, 453, 183 S.E. 2d 540, 544 (1971).

Applying the substantial evidence test here, which I believe to be the proper one, I feel defendant's motions for nonsuit as to

all charges should have been allowed. There is substantial evidence here of inadequate and perhaps careless bookkeeping in the embezzlement case and poor judgment in the misapplication of funds case by a harried county employee. There is no substantial evidence of criminal or corrupt conduct on her part. I vote to affirm the well-considered decision of the Court of Appeals.