WILTON B. PARKER, SHIRLEY K. PARKER, RANDY PARKER, JANET T. PARKER, GARY PARKER, DIANE P. PARKER, KEITH PARKER, DARLENE W. PARKER, JAMES ALAN PARKER, ANN D. PARKER, KEITH SLOCUM, EUGENE BARBOUR, DIXIE BARBOUR, VERNON THOMPSON, PATRICIA THOMSON, DELBERT ALLEN, JR., DEBORAH BLACKMON, BETTIE C. UPCHURCH, GLENN TWIGG, ADMINISTRATOR OF THE ESTATE OF PHARO TWIGG, DELLA T. TWIGG, THOMAS EARL TOOLE, MAYRLENE TOOLE, CHRISTINE P. THOMPSON, LAURCEY MASSENGILL, CHARLIE MATTHEWS AND LORRAINE MATTHEWS, PLAINTIFFS-APPELLANTS v. W. TERRY BAREFOOT AND RITA J. BAREFOOT, DEFENDANTS-APPELLEES

No. COA97-713

(Filed 7 July 1998)

### Nuisance— instructions—latest technology

The trial court erred in an action against the operators of an industrial hog facility by refusing plaintiffs' requested instruction that the law does not recognize as a defense to a claim of nuisance that defendants used the best technical knowledge available at the time to avoid or alleviate the nuisance.

Judge MARTIN, John C., dissenting.

Appeal by plaintiffs-appellants from judgment entered 30 August 1997 by Judge Howard E. Manning in Johnston County Superior Court. Heard in the Court of Appeals 2 April 1998.

*Morgan & Reeves, by Robert B. Morgan and Eric Reeves, attorneys for plaintiffs-appellants.*

*Bode, Call & Stroupe, L.L.P., by John V. Hunter, III and Diana E. Ricketts and Narron, O'Hale & Whittington, by John P. O'Hale, attorneys for defendants-appellees.*

WYNN, Judge.

The appealing parties in this case present one issue for us to consider: "Whether the trial court's denial of plaintiffs' written request to

instruct the jury that the law does not recognize as a defense to a claim of nuisance that defendants used the best technical knowledge available at the time to avoid or alleviate the nuisance constitutes reversible error?" We answer: "Yes"; and therefore award the plaintiffs a new trial.

The plaintiffs in this case own and reside on certain tracts of land located in the Town of Four Oaks in Johnston County, North Carolina. In close proximity to plaintiffs' property lies defendants' 95 acre farm, upon which defendants operate an industrial hog production facility. This facility, which was designed by the Federal Soil Conservation Service in 1991, consists of four hog houses—together holding approximately 2,880 hogs—and an open pit lagoon in which waste from the hogs is deposited and stored for future use as crop fertilizer.

In consideration of the odor that often emanates from a hog lagoon, defendants surrounded the lagoon with large acreage fields of growing crops, trees and woods. They also installed an expensive, underground irrigation system and built the lagoon 20% larger than required so as to better control the waste odor. Despite these efforts, however, plaintiffs claim that the odor from the lagoon is often so noxious that at times it burns their eyes and noses, making it difficult for them to see and breathe. Indeed, for those plaintiffs living closest to defendants' hog facility—the three closest homes being situated across the road from the hog facility, approximately 650 feet from the facility, and 1,750 feet from the facility—the stench from the lagoon is described as unbearable.

Unwilling to endure the lagoon odor, plaintiffs sought injunctive and monetary relief against defendants alleging that the hog facility constituted a nuisance. Defendants answered stating that the facility was not a nuisance, plaintiffs' suit was barred under our State's right-to-farm laws, and federal law pre-empted a state common law nuisance claim. Defendants also asserted that their hog facility was "operated with the most careful, prudent and modern methods known to science."

This action was tried before a jury in Johnston County Superior Court, the Honorable Howard E. Manning, Jr. presiding. At the close of all the evidence, and before the jury began its deliberations, plaintiffs requested that Judge Manning specifically instruct the jury that the law does not recognize as a defense to a claim of nuisance that defendants used "state-of-the-art" technology in an attempt to avoid or alleviate the nuisance. This request, however, was denied and on

## PARKER v. BAREFOOT

[130 N.C. App. 18 (1998)]

30 August 1996, the jury returned a verdict in favor of defendants. Assigning error to Judge Manning's denial of their request for the specific jury instruction, plaintiffs bring this appeal.

When a request is made for a specific jury instruction, which is itself correct and supported by the evidence, the trial court, while not obliged to adopt the precise language of the prayer, must give at least the substance of the requested instruction, otherwise he commits reversible error. *Faeber v. E.C.T. Corp.*, 16 N.C. App. 429, 430, 92 S.E.2d 1, 2 (1972) (citing *Bass v. Hocutt*, 221 N.C. 218, 19 S.E.2d 871(1942)). In determining on appeal whether the instructions given encompass the substance of the instruction requested, the reviewing court must consider and review the challenged instructions in their entirety; it cannot dissect and examine them in fragments. *Robinson v. Seaboard System Ry.*, 87 N.C. App. 512, 524, 361 S.E.2d 909, 917 (1987), *cert. denied*, 321 N.C. 474, 364 S.E.2d 924 (1998) (citing *Gregory v. Lynch*, 271 N.C. 198, 155 S.E.2d 488 (1967)). Furthermore, "[u]nder such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury." *Id.*

In sum, a party appealing from a trial court's denial of a request for a specific jury instruction, bears the burden of showing the reviewing court that: (1) the requested instruction was correct as a matter of law; (2) the requested instruction was supported by the evidence; and (3) the instruction given by the trial court, when viewed in its entirety, failed to encompass the substance of the law as they requested, and that such a failure likely mislead the jury.

*Plaintiff's first burden: "Was the requested instruction correct as a matter of law?"*

The plaintiffs requested that the following instruction be given to the jury:

The law does not recognize as a defense to a claim of nuisance that defendants used the best technical knowledge available at the time to avoid or alleviate the nuisance, and therefore the defendants may be held liable for creating a nuisance even though they used the latest known technical devices in their attempts to control the condition. The use of technical equipment and control devices may be considered by you as evidence bearing upon the magnitude of a nuisance but not as to its existence.

Indeed, if defendants created a nuisance they are liable for the resulting injuries, regardless of the degree of skill they used to avoid or alleviate the nuisance. (citations omitted).

According to plaintiffs, this requested instruction correctly reflects North Carolina's private nuisance law as set forth in *Morgan v. High Penn Oil Company & Southern Oil Transportation Co., Inc.*, 238 N.C. 185, 77 S.E.2d 682 (1953) and *Watts v. PAMA*, 256 N.C. 611, 124 S.E.2d 908 (1962). We agree.

In both *Morgan* and *Watts*, our Supreme Court noted that "[a] person who intentionally creates or maintains a private nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised by him to avoid such injury." *Morgan*, 238 N.C. at 194, 77 S.E.2d at 689 (citations omitted); *Watts*, 256 N.C. at 616, 124 S.E.2d at 813 (citations omitted). Hence, in this State, a defendant's use of state-of-the-art technology in the operation of a facility or the fact that he was not negligent in the design or construction of that facility are not defenses to a nuisance claim. The instruction requested by plaintiffs embodies the substance of this rule.

Nonetheless, defendants contend that the requested instruction is in several respects, legally impermissible, misleading and inaccurate. The instruction is impermissible, they contend, because it runs contrary to Rule 51(a) of the North Carolina Rules of Civil Procedure, which states that a judge, in charging a jury, "shall not give an opinion as to whether or not a fact is fully or sufficiently proved, summarize or recapitulate the evidence, or . . . explain the application of law to the evidence." According to defendants, the instruction requested by plaintiffs called upon the trial court to explain the law arising on the evidence and to make findings of facts that were in dispute. This argument is unpersuasive. The language of plaintiff's instruction is not specific to the facts of this case; rather, the instruction, like most jury instructions, is worded in very general terms so as to apply to any nuisance case. Thus, if the trial court had given the jury the requested instruction, it would not have been explaining the law as it applied to the particular evidence presented in this case, neither would it have been making findings of facts particular to this case.

As to defendants' contention that plaintiffs' requested instruction is misleading, defendants argue that the statement in the first sentence of the instruction—that "defendants may be held liable for creating a nuisance even though they used the latest known technical devices in their attempt to control the condition"—and the statement

in the last sentence of the instruction—that "if defendants created a nuisance they are liable for the resulting injuries, regardless of the degree of skill they used to avoid or alleviate the nuisance"—are both confusing in substance and in form. The first sentence is confusing, they argue, because it suggests to the jury that even if the technology used by defendants succeeded in avoiding the creation of a nuisance, they could still hold defendants liable. In that same vein, they argue, the last sentence is confusing because it implies either that they failed in alleviating the odors of which plaintiffs complain, or that their hog operation would still be a nuisance even if they had succeeded in alleviating those odors. Again, we find defendants' arguments unpersuasive. To begin, the sentences complained of by defendants simply paraphrase the law as set forth in *Morgan* and *Watts*—i.e. that regardless of the degree of care or skill exercised, a person who intentionally creates or maintains a nuisance is liable for the resulting injuries. Furthermore, because plaintiffs' instruction speaks only to those situations in which a defendant *attempts, but fails to control a nuisance condition*, we do not believe that there is any reasonable possibility that a jury, in hearing the instruction, would be led to think that it could still find defendants liable for operating a nuisance even if they succeeded in avoiding it.

Finally, defendants contend that plaintiffs' requested instruction is inaccurate because the second sentence of the instruction, which tells the jury that they may consider the use of technical equipment in determining the "magnitude of a nuisance," misstates the law in this State. It is a misstatement, they argue, because it implies that a jury sitting as the trier of fact in a nuisance case is to determine the degree to which a defendants' facility may be a nuisance. According to defendants, this is a false implication because either something is or is not a nuisance; the extent of the nuisance, they argue, should not be a factor. Given the facts of this case, we disagree.

Under North Carolina law, "[t]he degree of unreasonableness of the defendants' conduct determines whether damages or permanent injunctive relief is the appropriate remedy for an intentional private nuisance." If a trier of fact determines that a defendants' conduct is indeed an unreasonable interference with another's use and enjoyment of their land, then the plaintiff is entitled to damages. "To award damages, the defendant's conduct, in and of itself, need not be unreasonable." In contrast, however, "injunctive relief requires proof that the defendant's conduct itself is unreasonable[.] . ." Such proof entails evidence which tends to show that the gravity of the harm to the

PARKER v. BAREFOOT

[130 N.C. App. 18 (1998)]

plaintiff outweighs the utility of the conduct to the defendant. In this case, plaintiffs allege entitlement to both compensatory and injunctive relief if it were determined that defendants' hog operation was a nuisance. As such, the "magnitude of a nuisance" may have indeed been a factor for the jury in this case to have considered in determining the appropriate remedy to which plaintiffs were entitled.

Having found no merit in any of defendants' assertions regarding the legal accurateness of plaintiffs' requested instruction, we conclude that the requested instruction correctly embodies the law of this State as set forth in *Morgan* and *Watts*.

*Plaintiff's second burden: "Was the requested instruction supported by the evidence presented at trial?"*

In attempting to meet this second burden, plaintiffs contend that their proposed instruction was supported by the evidence because defendants main defense during trial and even before the trial court at the summary judgment stage, was that their hog facility was "state-of-the-art" and "[was] operated with the most careful, prudent and modern methods known to science." Defendants, on the other hand, contend that the evidence presented by them regarding the design of their hog operation was not in the nature of a "state-of-the-art" defense; rather, they presented technological and design-related evidence for the sole purpose of refuting plaintiffs' contention that their facility was a "shoddy, second-rate affair" and that there were better and more superior systems by which to operate a hog farm. Thus, defendants argue, they were not contending to jury that the use of the best available technology in any way barred plaintiffs' nuisance claim as was implied by the proposed instruction. To the contrary, they argue, their main and only defense at trial was simply that their hog farm was not a nuisance; that is, that it was reasonably designed and that the technology used in operating it effectively alleviated the odors complained of by plaintiffs.

Our review of the record reveals that during the course of the trial, defendants offered both testimony and argument which could have reasonably been viewed by the jury as an affirmative attempt by defendants to make out a "state-of-the-art" defense. For example, when asked on direct examination by defense counsel whether there had been any negligence in the design, construction, and operation of defendant's farm, Chris Smith, a Soil Conservation Technician for the U.S. Department of Agriculture, testified that he had prepared the plans for defendants' waste management system, that the system was

designed and constructed in full compliance with federal specifications, and that its design and subsequent construction were both "state of the art technology." He further testified that as a result of this system, defendants operated one of the cleaner hog farms of which he knew. In addition, the record indicates that defendant W. Terry Barefoot also testified that his lagoons were constructed and operated in accordance with federal regulations. Significantly, during closing arguments, defense counsel made the following argument to the jury:

> Terry Barefoot is not only a farmer, he is a good farmer. And Chris Smith told you that the lagoons were put in there and he designed it, that is, Chris Smith. *It was in accordance with all technical data that it is a lagoon—this is the federal government we're talking about, the United States Department of Agriculture. It's their regulations.* And it was done so well, that the government gave Terry Barefoot $7,500 because he wanted that kind of lagoon, because it complied with all regulations . . .

> And, what, ladies and gentlemen of the jury, does the evidence show and they're complaining about? *And then he puts in a sprinkler system so they don't have to use a spray gun or any other type but what the Department of Agriculture wants and they pay him some more money because it's first-class, state-of-the-art and that's just what they wanted.*

> Now your tax dollars are being spent because Terry Barefoot is doing just what the government wants him to do. Russell Holt said, and I think this surmises the whole case, "Terry and Rita Barefoot own this land. He's doing what he's supposed to do. And, if I've got a gripe, my gripe's not with them. I'd take it to Raleigh or Washington to change the law. This is not the place for that decision to be made." (emphasis added).

Given these closings statements, as well as the nature of much of the testimony proffered by defendants, we conclude that the evidence in this case supported a request such as the one proposed by plaintiffs.

*Plaintiff's third burden: "Notwithstanding the legal and factual sufficiency of plaintiffs' requested instructions, did the instruction given by the trial court encompass, at least in substance, the law as requested by plaintiffs?"*

The trial court gave the jury the following pattern instructions on the law regarding private nuisances:

PARKER v. BAREFOOT

[130 N.C. App. 18 (1998)]

The issue reads: "Did the Defendants substantially and unreasonably interfere with the Plaintiffs' use and enjoyment of their property?" On this issue, ladies and gentlemen, the burden of proof is upon the Plaintiffs. This means that the Plaintiffs must prove, by the greater weight of the evidence, two things. First, that the Defendants substantially interfered with the Plaintiffs' use and enjoyment of their property. Interference is substantial when it results in significant annoyance, material or physical discomfort, or injury to a person's health or property. A slight inconvenience or a petty annoyance is not a substantial interference. Second, that such substantial interference is unreasonable. Substantial interference is unreasonable if a person of ordinary prudence and discretion would consider it excessive or inappropriate after giving due consideration to the interest of the Plaintiffs, the interest of the Defendants and the interest of the community. In determining whether such substantial interference is unreasonable, you may consider the surroundings and conditions under which the Defendants' interference occurs, the character of the location in which the nuisance is alleged to have occurred, the nature, utility and social value of the Defendants' operation, the nature, utility and social value of the Plaintiffs' use and enjoyment that have been invaded, the suitability of the location for the Defendants' operation, the suitability of the location for the use which Plaintiffs make of their property, the extent, nature and frequency of the harm to the Plaintiffs' interest, and the priority in time of occupation or conflicting uses between the Plaintiffs and the Defendants.

Plaintiffs contend that this instruction does not accurately reflect our State's law on private nuisances because it fails to instruct the jury that defendants could not defeat plaintiffs' nuisance claim with a "state-of-the-art" defense. Defendants contend, however, that the trial court's instruction was sufficient because it enabled the jury to consider a number of factors in determining the reasonableness of defendants' hog operation without overemphasizing one factor to the detriment of another. By enabling the jury to consider such factors, defendants argue, the court's instruction encompassed the substance of the instruction proposed by plaintiffs.

Viewing the challenged pattern instruction in its entirety, we find that it did not sufficiently encompass the substance of plaintiffs' request. While the trial court's instruction set forth factors—such as "the surroundings and conditions under which the Defendants' inter-

ference occurs," and "the nature, utility and social value of the Defendants' operations" in determining whether defendants' operation was unreasonable—these factors do not fully encompass the gist of plaintiffs' requested instruction. In short, these factors do not amount to the court instructing the jury that they could still find defendants liable for substantially and unreasonably interfering with plaintiffs' use and enjoyment of their property even if they concluded that defendants' hog farm was designed and operated in conformance with federal regulations and that it was the most technologically advanced, state-of-the-art hog farm that defendants could have constructed. Moreover, it appears likely that based on the "state-of-the-art" evidence in this case, the failure of the court to specifically instruct the jury on the limiting effect of this evidence may have served to confuse the jury as to the issues to be determined.

Finally, we note that although the trial court in this case permitted plaintiffs' counsel to argue during closing arguments the law as they had requested, a party's reading of the law simply does not have the same effect on a jury as does the trial court's reading of an instruction which is itself legally correct and supported by the evidence. This is particularly true where, as here, the trial court, after reading the pattern instructions, charged the jury as follows:

> . . . You must then *apply to those facts the law which I am about to give you*. It is absolutely necessary that you understand and *apply the law as I give it to you*, not as you think the law is or you might wish the law to be. . . (emphasis added).

In conclusion, we find that plaintiffs have met their burden of showing that their requested instruction was legally correct and supported by the evidence, and that the substance of that request was not embodied in the instruction given by the trial court. Accordingly, we grant the plaintiffs a

New Trial.

Judge WALKER concurs.

Judge MARTIN, JOHN C. dissents.

Judge MARTIN, John C., dissenting.

I respectfully dissent. While I agree with the majority that the instruction requested by plaintiffs included a correct statement of

North Carolina's private nuisance law, in my view, the instruction was not warranted by the evidence in this case nor were plaintiffs prejudiced by the trial court's refusal to give it.

The trial court is required to instruct the jury upon the law relevant to every substantial feature of the case. *Holtman v. Reese*, 119 N.C. App. 747, 460 S.E.2d 338 (1995). In addition, the trial court must also grant a party's written request for special instructions pursuant to G.S. § 1A-1, Rule 51(b) when the requested instructions are legally correct and supported by the evidence. *Williams v. Randolph*, 94 N.C. App. 413, 380 S.E.2d 553, *disc. review denied*, 325 N.C. 437, 384 S.E.2d 547 (1989). The trial court may refuse, however, to give such requested special instructions when they concern issues which are not relevant to the case. *State v. Agnew*, 294 N.C. 382, 241 S.E.2d 684, *cert. denied*, 439 U.S. 830, 58 L.Ed.2d 124 (1978). The jury charge must be considered contextually and in its entirety and will, when it is so considered, be held to be sufficient if "it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed . . . ." *Jones v. Development Co.*, 16 N.C. App. 80, 86-7, 191 S.E.2d 435, 440, *cert. denied*, 282 N.C. 304, 192 S.E.2d 194 (1972). The burden is upon the party asserting error to show the jury was misled or that the verdict was affected by the omitted instruction. *Robinson v. Seaboard System Railroad*, 87 N.C. App. 512, 361 S.E.2d 909 (1987), *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1988).

The testimony with respect to the design and construction of defendant's facility, characterized by the majority as a "state of the art defense," was, in actuality, an insignificant aspect of the case. Such testimony does not appear to me to have been offered in defense of plaintiff's claim that the noxious odors emanating from defendants' facility constituted a nuisance, but rather to refute evidence by plaintiffs that such odors were due to the facility's design and to refute plaintiffs' repeated characterizations of the facility as "shoddy" and "second rate," which characterizations were wholly irrelevant to a determination of whether the odors constituted a nuisance. Thus, it was well within the trial court's discretion to decline the requested instruction as it concerned an issue which was not relevant to the jury's determination of nuisance. Moreover, the trial court's instructions adequately presented the law of the case and I find no reasonable basis, other than pure speculation, to conclude that the jury was misled, misinformed, or confused by the trial court's refusal to give the requested instruction. Plaintiffs having assigned no other errors

to the conduct of this two week trial, I would vote to sustain the verdict of the jury and find no error.